TIFFANY CHEUNG (CA SBN 211497)
TCheung@mofo.com
CAMILA A. TAPERNOUX (CA SBN 299289)
CTapernoux@mofo.com
MORRISON & FOERSTER LLP
425 Market Street,
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Defendant
OPENX TECHNOLOGIES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KILEY KRZYZEK AND CHRISTIAN CALCINES, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiffs,<br><br>v.<br><br>OPENX TECHNOLOGIES, INC.,<br><br>Defendant. | Case No. 3:25-cv-05588-SI<br><br>**DEFENDANT OPENX TECHNOLOGIES, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: December 5, 2025<br>Time: 10:00 a.m.<br>Courtroom: 1 - 17th Floor<br>Judge: The Honorable Susan Illston<br><br>Action Filed: July 2, 2025 |

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE THAT on December 5, 2025, at 10:00am, before the Honorable Susan Illston, United States District Judge, in Courtroom 1 at the United States District Court, Northern District of California, located on the 17th Floor of the San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, California, Defendant OpenX Technologies, Inc. will and hereby does move this Court for an order dismissing without leave to amend the Class Action Complaint filed by Plaintiffs Kiley Krzyzek and Christian Calcines individually and on behalf of all other persons similarly situated.

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, and all pleadings, papers, and records filed in this action, and other such evidence and argument as may be presented at the hearing on this Motion.

Dated: October 3, 2025

MORRISON & FOERSTER LLP

By: */s/ Tiffany Cheung*
Tiffany Cheung
Camila A. Tapernoux

*Attorneys for Defendant*
OPENX TECHNOLOGIES, INC.

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION .......... 1

II. BACKGROUND .......... 2

- A. OpenX operates an independent ad exchange .......... 2
- B. OpenX's pixel facilitates creation of anonymous device profiles that cannot be associated with any individual person's identity .......... 3
- C. Plaintiffs' Complaint consists primarily of vague allegations about data brokers in general .......... 4
- D. Plaintiffs' alleged claims and experiences .......... 5

III. LEGAL STANDARD .......... 6

- A. Rule 12(b)(1) .......... 6
- B. Rule 12(b)(6) .......... 6

IV. ARGUMENT .......... 7

- A. Because Plaintiffs Fail to Establish Article III Standing, Their Claims Must Be Dismissed for Lack of Subject Matter Jurisdiction .......... 7
  - 1. Plaintiffs lack standing because they do not identify any information in which they had a protectable privacy interest .......... 8
  - 2. Plaintiffs also lack standing because they do not allege that OpenX disclosed any of their personally identifiable information .......... 8
- B. Plaintiffs' Complaint Fails to State a Claim .......... 10
  - 1. Plaintiffs do not allege the reasonable expectation of privacy or egregious conduct required for Intrusion Upon Seclusion (Count I) .......... 10
  - 2. Plaintiffs fail to state a claim for violation of CIPA § 631(a) or ECPA § 2511(1) (Counts II and V) .......... 13
  - 3. Plaintiffs fail to state a claim for violation of CIPA § 638.51(a) (Count III) .......... 19
  - 4. Plaintiffs fail to state a claim for Unjust Enrichment (Count IV) .......... 22

V. CONCLUSION .......... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adler v. Community.com, Inc.*,
2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) ... 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ... 7

*Cabral v. Supple, LLC*,
2012 WL 12895825 (C.D. Cal. Oct. 3 2012) ... 12

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ... 7

*Cline v. Reetz-Laiolo*,
329 F. Supp. 3d 1000 (N.D. Cal. 2018) ... 13

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ... 18

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ... 10

*Farst v. Autozone, Inc.*,
700 F. Supp. 3d 222 (M.D. Pa. 2023) ... 11

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011), *modified* ... 13

*In re Google Location Histor. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) ... 12

*In re Google Priv. Pol'y Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) ... 13

*Graham v. Noom, Inc.* (*Graham I*),
533 F. Supp. 3d 823 (N.D. Cal. 2021) ... 14, 15, 16

*Graham v. Noom, Inc.* (*Graham II*),
2021 WL 3602215 (N.D. Cal. Aug. 13, 2021) ... 16

*Harris v. KM Indus., Inc.*,
980 F.3d 694 (9th Cir. 2020) ... 6

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) .......... 8, 12

*Heiting v. FKA Distrib. Co.*,
2025 WL 736594 (C.D. Cal. Feb. 3, 2025) .......... 9

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) .......... 10

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) .......... 10

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024) .......... 10

*In re iPhone Application Litig.* (*iPhone II*),
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......... 12, 13

*In re Jenson*,
24 Cal. App. 5th 266 (2018) .......... 22

*King v. Hard Rock Cafe Int'l (USA), Inc.*,
2025 WL 1635419 (E.D. Cal. June 9, 2025) .......... 15

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025), *appeal docketed*, No. 25-2857 (9th Cir. May 2, 2025) .......... 18, 19

*Licea v. Hickory Farms LLC*,
2024 WL 1698147 (L.A. Super. Ct. Mar. 13, 2024) .......... 21

*Lightoller v. JetBlue Airways Corp.*,
2023 WL 3963823 (S.D. Cal. June 12, 2023) .......... 8

*Low v. LinkedIn Corp.* (*Low II*),
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 9, 12, 13

*In re MacBook Keyboard Litig.*,
2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) .......... 22, 23

*Mikulsky v. Noom, Inc.* (*Mikulsky I*),
682 F. Supp. 3d 855 (S.D. Cal. 2023) .......... 8

*Mikulsky v. Noom, Inc.* (*Mikulsky II*),
2024 WL 251171 (S.D. Cal. Jan. 22, 2024) .......... 9

*NovelPoster v. Javitch Canfield Grp.*,
140 F. Supp. 3d 938 (N.D. Cal. 2014) .......... 17

*People v. Mitchell*,
46 Cal. App. 5th 919 (2020)........................................ 21

*Roe v. Amgen Inc.*,
2024 WL 2873482 (C.D. Cal. June 5, 2024) ........................................ 19

*Rosenow v. Facebook, Inc.*,
2020 WL 1984062 (S.D. Cal. Apr. 27, 2020) ........................................ 17

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
2025 WL 1141168 (C.D. Cal. Feb. 27, 2025)........................................ 19

*Saeedy v. Microsoft Corp.*,
2023 WL 8828852 (W.D. Wash. Dec. 21, 2023)........................................ 8, 10

*Sanchez v. Cars.com*,
2025 WL 487194 (L.A. Super. Ct. Jan. 27, 2025) ........................................ 21

*Semien v. Pubmatic, Inc.*,
No. 3:25-cv-03164 (N.D. Cal.), ECF No. 1 ........................................ 1

*Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*,
733 F.3d 1251 (9th Cir. 2013)........................................ 7

*Sharma v. Volkswagen AG*,
524 F. Supp. 3d 891 (N.D. Cal. 2021) ........................................ 22

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) ........................................ 11

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020)........................................ 22, 23

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........................................ 6

*Sussman v. Am. Broad. Co.*,
186 F.3d 1200 (9th Cir. 1999)........................................ 19

*Thomas v. Papa Johns Int'l, Inc.*,
2024 WL 2060140 (S.D. Cal. May 8, 2024)........................................ 11

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........................................ 7

*United States v. Google LLC*,
778 F. Supp. 3d 797 (E.D. Va. 2025)........................................ 1

*United States v. Reed*,
575 F.3d 900 (9th Cir. 2009) .......... 14

*Warren v. Fox Fam. Worldwide, Inc.*,
328 F.3d 1136 (9th Cir. 2003) .......... 6

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) .......... 12, 18

*Yale v. Clicktale, Inc.*,
2021 WL 1428400 (N.D. Cal. Apr. 15, 2021) .......... 15, 16

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 15

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 14, 15

*In re Zynga Priv. Litig.*,
750 F.3d at 1101–02 .......... 17

**Statutes**

18 U.S.C. § 2511(1)(a) .......... 14, 16

18 U.S.C. §§ 2511(1)(c) .......... 16

18 U.S.C. §§ 2511(1)(d) .......... 16

18 U.S.C. § 2511(2)(d) .......... 15, 18

Cal. Civ. Code § 1798. .......... 3, 21

Cal. Penal Code § 631(a) .......... 14, 16

Cal. Penal Code § 638.50(b) .......... 19

Cal. Penal Code § 638.51(a) .......... 19, 20

Cal. Penal Code § 638.52(d) .......... 20

**Legislative Materials**

AB 929 Analysis, Assembly Committee on Privacy & Consumer Protection,
(Cal. Apr. 21, 2015) .......... 17

AB 929 Analysis, Senate Committee on Public Safety,
(Cal. June 4, 2015) .......... 17

## I. INTRODUCTION

Plaintiffs Kiley Krzyzek and Christian Calcines bring sweeping allegations based on little more than generalized commentary about the online advertising industry. Their Complaint, which is largely copy-pasted from that filed by the same counsel in *Semien v. Pubmatic, Inc.*, No. 3:25-cv-03164 (N.D. Cal.) (ECF No. 1) and several other recent cases, fails to connect their speculative theories to any specific conduct by Defendant OpenX—much less to their own alleged experiences. It also otherwise fails to sufficiently plead a claim under relevant law.

OpenX operates an independent advertising exchange that enables website publishers to sell digital ad space on properties they own and operate and facilitates advertisers' ability to buy and display their advertisements on that digital ad space. These services provide significant, long-recognized benefits: they help online publishers monetize their properties and create quality low- or no-cost content for online users to enjoy; they help advertisers reach new audiences and compete to foster a healthy economy for online users to partake in; and they help deliver relevant, engaging, and safe advertisements for online users to view. In short, as courts have recognized, advertising exchanges like OpenX's have partnered directly with online publishers to "fuel[] the Internet's growth" since its inception. *United States v. Google LLC*, 778 F. Supp. 3d 797, 813 (E.D. Va. 2025).

In order to offer these valuable services, OpenX's publisher partners must send OpenX certain information about their online properties and, to a lesser extent, the users visiting them. But these data collection practices are limited, conducted at the direction and with the participation of OpenX's publisher partners, and within the reasonable expectations of online users. As Plaintiffs repeatedly acknowledge in their Complaint, OpenX collects only non-identifying information tied to devices—not individuals. In other words, while publishers may provide OpenX with access to certain information about the online activity of device ABC123 and OpenX may use that information to help its publishers serve ads on that device, OpenX does not know—and has no way of knowing—that device ABC123 is used by any specific individual. This publisher-directed collection of anonymous device information is expected by reasonable

online users, as evidenced by the many federal and state consumer privacy laws that specifically reference and permit it in the context of online advertising. Accordingly, as courts across this Circuit have recognized, there is no protectable privacy interest in such non-identifying data.

Despite this, Plaintiffs attempt to recast OpenX's routine, industry-standard practices as privacy violations. But the Complaint is critically deficient. First, it relies on speculation about "data brokers" in general rather than factual allegations about OpenX, and does not allege any concrete injury to either Plaintiff sufficient to confer Article III standing. Next, the Complaint fails to identify any collection or disclosure of personally identifiable information, and fails to plausibly allege interception of the "contents" of any communication in transit. Likewise, the Complaint fails to plausibly allege that OpenX's technology is a "pen register" under the California Invasion of Privacy Act, a reading that would be contrary to conventional methods of statutory interpretation and the stated intentions of the California Senate. Finally, Plaintiffs' unjust enrichment claim fails for the independent reason that Plaintiffs have adequate remedies at law and cannot plead otherwise. For all these reasons, the Complaint should be dismissed in its entirety.

## II. BACKGROUND

### A. OpenX operates an independent ad exchange

OpenX is an independent supply-side platform ("SSP") that operates an advertising exchange. As an SSP, OpenX acts at the direction of its online publisher partners—such as websites that make digital content and information available to consumers—by providing them with tools to sell their advertising space to online advertisers. OpenX facilitates these online advertising transactions by providing a technical infrastructure that connects publishers with advertisers. Publishers maintain primary control over whether and how OpenX's technology is deployed on their sites, and they control the disclosures of such practices in their own website terms and privacy policies.

In carrying out this role, OpenX does not—and could not—sell the data of online users because, as Plaintiffs repeatedly acknowledge, OpenX does not maintain any files that identify

individual people. Instead, when directed by one of its publisher partners, OpenX collects certain anonymized device information, amongst other information about the publisher property and advertising space being sold on it. Using this limited information on behalf of its publisher partners, OpenX is able to help improve the relevance and efficacy of digital advertising on the publisher property, for example by helping to ensure the advertisements displayed on it are safe, relevant, and appropriately fit the size of the available advertising space.

Both Congress and state legislatures have passed legislation expressly permitting and regulating the type of interest-based advertising that OpenX facilitates. For example, the California Consumer Privacy Act ("CCPA") recognizes that businesses may engage in "cross-context behavioral advertising" (defined as "the targeting of advertising to a consumer based on [their activity] across businesses, [] websites, applications, or services"). *See* Cal. Civ. Code § 1798.140(k). Similarly, California's data broker registration law—Cal. Civ. Code § 1798.99.80 et seq.—presupposes the legality of businesses that facilitate such advertising, requiring them to register and provide transparency into their practices.

### B. OpenX's pixel facilitates creation of anonymous device profiles that cannot be associated with any individual person's identity

As Plaintiffs acknowledge, a website's publisher (not OpenX) may elect to install an OpenX pixel (which Plaintiffs term the "OpenX Tracker") on its website. (*See* Compl. ¶ 29*, ECF No. 1.)[1] That is, OpenX's pixel is only implemented if a publisher (itself or via a vendor, such as its ad server) affirmatively chooses to use it. Any collection of limited, device-level information occurs at the publisher's direction, and consistent with the publisher's own user-facing disclosures in their terms and conditions and privacy policies.

After a user has "reached" a website deploying the OpenX pixel (*id.* ¶ 159), the publisher may then enable the OpenX technology to place cookies on the consumer's browser or otherwise record limited browser and device-level information. (*Id.* ¶ 160.) This anonymous information

[1] Plaintiffs' Complaint begins with paragraph numbers 1–38, and then reverts to paragraph 21 and continues from there. Accordingly, for paragraph number 21–38, there are two separate paragraphs in the Complaint with that number. For clarity, OpenX includes an asterisk after the paragraph number when the citation applies to the second time that paragraph number appears in the Complaint.

cannot be tied back to any specific individual. Plaintiffs make many sweeping allegations about what OpenX may theoretically do with this limited information. (*See, e.g.*, *id.* ¶¶ 93–94, 148.) Nowhere, however, do they allege that OpenX uses this data to match any device information or alleged device "profiles" to a specific person. For example, while Plaintiffs make a conclusory claim that IP addresses can be used "to personally identify individuals" (*see id.* ¶ 100 (citation omitted)), they do not allege that OpenX does so. Nor could they, because as Plaintiffs themselves acknowledge, those identifiers are not connected to names, contact information, or other personally identifying details. Thus, Plaintiffs fail to allege that any of the activities in which OpenX purportedly engages deanonymizes any data or specifically identifies the Plaintiffs (or any individual persons).

### C. Plaintiffs' Complaint consists primarily of vague allegations about data brokers in general

Instead, paragraph after paragraph of Plaintiffs' Complaint consist of conclusory allegations with no factual support at all, much less any support for how those allegations relate to the named Plaintiffs' experiences. Several pages of Plaintiffs' Complaint are devoted to generalized allegations about data brokers and broad critiques of the online advertising industry at large.[2] (*Id.* ¶¶ 10–31*.) For instance, Plaintiffs reference a "report" analyzing ten non-specified "data brokers" and stating that they advertise data for sale on U.S. individuals' sensitive demographic information—but Plaintiffs do not allege that ***OpenX*** does so. (*Id.* ¶ 15.) Several more pages of Plaintiffs' Complaint set forth allegations about OpenX's purported activities that have no bearing on Plaintiffs' actual claims. As one example, while Plaintiffs allege that "OpenX [] collects profile data" as well as "hashed email addresses" (*id.* ¶¶ 71, 138–139), they do not allege that OpenX collected ***their*** profile data or email addresses. Plaintiffs likewise expend many paragraphs making allegations about data that OpenX allegedly tracks through mobile

[2] While Plaintiffs allege that OpenX is a data broker registered with the State of California (Compl. ¶ 32*) and that "data brokers like Defendant" "compile" information about devices' activity "across the Internet" (*id.* ¶¶ 19, 21), they do not allege that OpenX violated any statute specifically regulating data brokers. Indeed, OpenX's registration status further confirms that far from violating any privacy statutes, it operates a business long recognized and regulated in California, and complies with applicable regulations.

applications and uses for so-called "ID Bridging" (*id*. ¶¶ 115–136), but neither Plaintiff alleges that OpenX tracked ***any*** of their activity or information on mobile applications.

### D. Plaintiffs' alleged claims and experiences

Rather, each named Plaintiff alleges that they visited a single website that purportedly had an OpenX pixel installed. First, Plaintiff Krzyzek alleges that she visited the Covered CA website to apply for health insurance, and that an OpenX pixel was loaded onto the Covered CA website when she visited. (*Id.* ¶¶ 189–90.) But Covered CA does not use the OpenX pixel. Indeed, Plaintiffs' only support for the allegation that Covered CA had an OpenX pixel installed is an unsubstantiated third-party report from "The Markup" which expressly states that its "results should not be taken as the final word on potential privacy violations by a given website. Rather, they should be treated as an initial automated inspection that requires further investigation before a definitive claim can be made." (*Id.* ¶ 168 (citing https://github.com/the-markup/investigation-covered-california-linkedin-tracker/blob/main/blacklight-scans/20250224-141900-www.coveredca.com/report.md.) Had Plaintiff Krzyzek conducted reasonable diligence, she would have discovered that OpenX's pixel is not installed on the Covered CA website. Nonetheless, Plaintiff Krzyzek alleges that this purportedly present pixel installed tracking cookies onto her browser. (*Id.* ¶ 191.) The only information she alleges OpenX collected about her is her device and browser information, her visit to Covered CA (although she does not identify any specific URLs she visited, much less that she claims were tracked), and her "future web browsing activity." (*Id.* ¶¶ 193, 196.) These entirely conclusory claims have no support in the Complaint's references to the single unsubstantiated media report they cite or any other factual allegations.

Next, Plaintiff Calcines alleges that the Bon Appétit website had an OpenX pixel installed when he visited. (*Id.* ¶¶ 200–01.) Plaintiff Calcines includes an image purporting to show that the OpenX pixel "collected his IP address and information about his device and browser." (*Id.* ¶ 202.) Notably, this image does not reflect the collection or tracking of ***any*** IP address or device identification number—let alone one alleged to be associated with Plaintiff Calcines. Like

Plaintiff Krzyzek, Plaintiff Calcines alleges that the OpenX pixel installed cookies onto his browser, and tracked his article selections and "future web browsing activity." (*Id.* ¶¶ 205, 207, 210.) He too does not allege any specific URLs he visited or claims were tracked, let alone that those URLs contained any sensitive information related to him. Indeed, the only specific URL identified in the Complaint—which no Plaintiff alleges they visited—is a Bon Appétit webpage containing a recipe for "How to Make DIY Pop-Tarts Like Taylor Swift." (*Id.* ¶ 112.)

Finally, both Plaintiffs allege in wholly conclusory terms that OpenX provided third parties "with identity resolution services so that those entities could deanonymize the data it collected on" each of them. (*Id.* ¶¶ 194, 206.) Critically, they do not allege that their data was ever in fact deanonymized, by OpenX or other unspecified third parties. Indeed, Plaintiffs do not even allege how their data ***could*** have been deanonymized given that Plaintiffs acknowledge that OpenX collects only non-identifying device information.

## III. LEGAL STANDARD

### A. Rule 12(b)(1)

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(1) if the allegations are "insufficient on their face to invoke federal jurisdiction." *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020) (citation omitted). In evaluating a motion to dismiss for lack of subject matter jurisdiction, courts apply the same lens as under Rule 12(b)(6), accepting all non-conclusory, factual allegations as true and construing them in the light most favorable to Plaintiffs. *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). Article III standing is a jurisdictional requirement, and thus a Rule 12(b)(1) motion is the proper vehicle for dismissal where plaintiffs cannot demonstrate standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

### B. Rule 12(b)(6)

For a complaint to survive a motion to dismiss under Rule 12(b)(6), it must "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007). A plausible claim for relief "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Factual allegations must rise "above the speculative level" to raise a right to relief. *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). When a complaint pleads facts that are "merely consistent with a defendant's liability," it "stops short" of entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). A court may also disregard "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (citation omitted).

## IV. ARGUMENT

### A. Because Plaintiffs Fail to Establish Article III Standing, Their Claims Must Be Dismissed for Lack of Subject Matter Jurisdiction

"To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted). A "concrete" injury must be "'real, and not abstract,'" not merely "procedural." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424, 440 (2021) (quoting in part *Spokeo, Inc.*, 578 U.S. at 340–41). Plaintiffs bear the burden of "demonstrat[ing] standing for each claim that they press and for each form of relief that they seek. . . ." *Id.* at 431.

Alleging a statutory violation alone is insufficient. "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 426 (quoting *Spokeo, Inc.*, 578 U.S. at 340). To adequately plead injury based on a privacy violation—the grounds for all of Plaintiffs' causes of action in this case—a plaintiff must "identify the 'specific personal information [they] disclosed that implicates a protectable privacy interest.'" *Mikulsky v. Noom, Inc.* (*Mikulsky I*), 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) (citation omitted).

**1. Plaintiffs lack standing because they do not identify any information in which they had a protectable privacy interest**

Plaintiffs fail to identify any specific personal information allegedly collected by OpenX that "implicates a protectable privacy interest" as required by *Mikulsky I*. Instead, they allege only that they have a privacy interest in "precluding the dissemination and/or misuse of their sensitive, confidential communications and information," and "interact[ing] with various internet sites without . . . surveillance." (*See* Compl. ¶ 224.) The only information they allege OpenX collected when the OpenX pixel was deployed at its publisher partners' direction relates to their devices, browsers, and "web browsing activity." (*Supra* II.D) As detailed above, they do not allege that any of their personal information such as their name, age, or gender was collected, do not identify any specific URLs they visited that were collected (nor that they visited any URLs reflecting sensitive data), and do not allege that their data was ever deanonymized.

The law is clear that there is no protectable privacy interest in any of the information Plaintiffs allege that OpenX collected from them. *See, e.g.*, *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020) (no standing because "there is no legally protected privacy interest in IP addresses."); *Lightoller v. JetBlue Airways Corp.*, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) (no Article III injury from collecting data about plaintiff browsing flight information); *Saeedy v. Microsoft Corp.*, 2023 WL 8828852, at *5 (W.D. Wash. Dec. 21, 2023) (collection of "internet browsing activities, internet searches, . . . online shopping behavior, . . . keyword search terms, URLs, and unique user identifiers and cookies" not sufficient (citation omitted)). For this reason alone, all of Plaintiffs' claims must be dismissed for lack of standing.

**2. Plaintiffs also lack standing because they do not allege that OpenX disclosed any of their personally identifiable information**

Plaintiffs lack standing for the independent reason that they do not allege that OpenX actually collected any personally identifiable information, much less that OpenX used such data to personally identify Plaintiffs. *Mikulsky v. Noom, Inc.* (*Mikulsky II*), 2024 WL 251171, at *4 (S.D. Cal. Jan. 22, 2024) (dismissing CIPA claim for lack of standing because there is no

"protectible privacy interest" in "non-individually identifiable data"). Instead, Plaintiffs allege only that OpenX "provided Partner Pixels with identity resolution services so that those entities ***could*** deanonymize the data it collected" on them. (Comp. ¶¶ 194, 206 (emphasis added).) And even then, Plaintiffs do not allege how their data could in fact be deanonymized. To the contrary, Plaintiffs allege only that hypothetically, an advertiser could determine that anonymous device ID "user123" was the same device identified by a partner company with the anonymous device ID "userABC"—but not the actual identity of that device's user. (Compl. ¶¶ 23*–24* (citing a third-party paper discussing hypothetical actions by generic "3rd-parties like tracker.com and advertiser.com").) This is starkly insufficient. *Mikulsky II*, 2024 WL 251171, at *5 (allegations of ability to potentially deanonymize data not relevant to standing because they "do not pertain to Defendant or even purport to allege that these capabilities were executed by Defendant" as to plaintiff).

Even if true, these unsupported allegations are inadequate for standing absent any claim that either Plaintiff Krzyzek's or Plaintiff Calcines' data was ***in fact*** deanonymized. *See Heiting v. FKA Distrib. Co.*, 2025 WL 736594, at *3 (C.D. Cal. Feb. 3, 2025) (no standing without alleging "any reason to believe that [plaintiff] was indeed deanonymized."). Plaintiffs' conclusory allegations that third parties could theoretically use "ID Bridging" to "infer that it is the same [anonymous] individual accessing a publisher's site or sites from various devices or browsers" (Compl. ¶ 128 (citation omitted)) cannot save them, because nowhere do Plaintiffs allege that any data collected or compiled by OpenX was ever used to determine the identity of either Plaintiff Krzyzek or Plaintiff Calcines. *Low v. LinkedIn Corp.* (*Low I*) makes this clear. There, the plaintiff alleged that his anonymous LinkedIn ID was combined with his browsing history (which, again, neither Plaintiff here alleges happened with their data). *Low* held this insufficient for standing because plaintiff did "not allege[] *how* third party advertisers would be able to infer [his] personal identity" from that combination. 2011 WL 5509848, at *3 (N.D. Cal. Nov. 11, 2011); *see also Saeedy*, 2023 WL 8828852, at *4 ("anonymized data" insufficient to support standing).

### B. Plaintiffs' Complaint Fails to State a Claim

#### 1. Plaintiffs do not allege the reasonable expectation of privacy or egregious conduct required for Intrusion Upon Seclusion (Count I)

Plaintiffs' intrusion upon seclusion claim requires them to clear a "high bar" and establish: (i) a reasonable expectation of privacy in a legally protected privacy interest; and (ii) a highly offensive or serious intrusion (including any justification or other relevant interests). *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287–89 (2009); *see also In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020). When determining whether a reasonable expectation of privacy exists, "courts consider a variety of factors, including the customs, practices, and circumstances surrounding a defendant's particular activities." *Facebook Tracking Litig.*, 956 F.3d at 601–02. To determine whether an alleged privacy violation constitutes a highly offensive or serious intrusion, courts ask whether the alleged violation was sufficiently serious in nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right. *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 37 (1994). Plaintiffs' allegations fail as to both of the required elements.

##### a. Plaintiffs do not allege a reasonable expectation of privacy in a legally protected privacy interest

While Plaintiffs make sweeping, conclusory assertions that OpenX "amass[ed] . . . electronic information reflecting all aspects of [their] lives" (Compl. ¶ 229), the only information Plaintiffs actually allege that OpenX collected about them—at the direction of the website publishers—is information about their devices, browsers, visits to the Bon Appétit and Covered CA websites (though not any specific URLs), and unspecified "future web browsing activity." (*Supra* II.D.) But "[c]ontemporary internet browsing involves the collection of users' data, including by tracking users across the internet, *and a reasonable user should expect as much*." *Hubbard v. Google LLC*, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024). Indeed, the caselaw on point—discussed in detail below—focuses on the alleged collection of many more categories of information than Plaintiffs allege here (such as names, addresses, and emails), and even then

finds no reasonable expectation of privacy.

Plaintiffs cannot reasonably expect privacy in activities like visiting Bon Appétit, nor do they allege how or why they could. Indeed, the only URL from Bon Appétit identified in the Complaint (which neither Plaintiff alleges visiting) provides a recipe for Pop-Tarts. (Compl. ¶ 112.) Courts have held that analogous activity such as "[s]hopping on a public website, like shopping in a public store, is not an activity one can reasonably expect to keep private from the retailer." *See Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, at *2 (S.D. Cal. May 8, 2024) (quoting *Farst v. Autozone, Inc.*, 700 F. Supp. 3d 222, 230 (M.D. Pa. 2023)). The "difference in fora between online and in-person shopping outlets does not transform the generally public nature" of the act into a private one. *See Farst*, 700 F. Supp. 3d at 230 (citing RESTATEMENT (SECOND) OF TORTS § 652B). Plaintiffs' allegations as to Covered CA should be given no credence given that Plaintiffs have not and cannot allege that Covered CA has implemented the OpenX pixel. But even so, Plaintiffs allege only that Covered CA "is a website where Californians can shop for health insurance." (Compl. ¶ 166) Plaintiff Krzyzek alleges only that she "visited the Covered CA website . . . to apply for health insurance." (*Id.* ¶ 189.) She does not allege what URLs she visited, nor what sensitive or private information could have been revealed by her visit to Covered CA. She too has failed to allege a reasonable expectation of privacy in the fact that she visited this website. *See Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018) (rejecting argument that plaintiffs' searching and viewing of "publicly available health information"—similar to browsing an insurance website—was "qualitatively different" and of a "sensitive" nature).

Indeed, courts consistently hold that there is no reasonable expectation of privacy in the type of information Plaintiffs allege that OpenX collected at its publisher partners' direction. For example, in *Ji v. Naver Corp.*, the court held that plaintiffs failed to sufficiently plead that

collection of "user and device identifiers"—similar to the device and browser information Plaintiffs allege here—are "the type of information that could give rise to a privacy injury." 2022 WL 4624898, at *7 (N.D. Cal. Sep. 30, 2022). Likewise *Low v. LinkedIn Corp.* (*Low II*), 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012), held the same as to "browsing history" data, dismissing the intrusion upon seclusion claim there. *Heeger*, 509 F. Supp. 3d at 1189, held the same as to IP addresses. *See also In re Google Location Histor. Litig.*, 428 F. Supp. 3d 185, 199 (N.D. Cal. 2019) (same as to geolocation data); *Cabral v. Supple, LLC*, 2012 WL 12895825, at *3 (C.D. Cal. Oct. 3 2012) (same as to "names and addresses"); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1041 (N.D. Cal. 2014) (same as to emails).

For the foregoing reasons, Plaintiffs cannot establish a reasonable expectation of privacy in the information they allege OpenX collected from them. Accordingly, their intrusion upon seclusion claim must be dismissed.

**b. OpenX's alleged conduct does not constitute an egregious or highly offensive breach of norms**

Plaintiffs' intrusion upon seclusion claim also fails because they have not alleged that OpenX's conduct—which is expressly permitted and regulated by state and federal laws (*see supra* II.A)—is highly offensive or egregious. Precedent is clear that there is no "highly offensive intrusion of privacy" for the types of data allegedly collected here. *See In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012). The "disclosure" of "unique device identifier number[s]" "does not constitute an egregious breach of social norms." *Id*. Nor even does the disclosure of a person's "personal data," "geolocation information," name and identity, contact list, or contents of communications through social media to third party developers—information far more detailed than the information Plaintiffs allege here. *See id*. (as to "personal data" and "geolocation information"); *In re Google Priv. Pol'y Litig.*, 58 F. Supp. 3d 968, 974, 988 (N.D.

Cal. 2014) (disclosure of a person's name and identity, contact list, and contents of communications through social media to third-party developers "do[es] not plausibly rise to the level of intrusion necessary to establish an intrusion claim."). Indeed, the bar to state such a claim is so high that "[e]ven disclosure of personal information, including social security numbers" (which Plaintiffs do not allege are at issue) "does not constitute an 'egregious breach of the social norms' to establish an invasion of privacy claim." *Low II*, 900 F. Supp. 2d at 1025 (citation omitted).

As demonstrated in the cases cited above, Plaintiffs' conclusory allegations that OpenX collects standard device, browser, and web traffic information (on behalf of its publisher partners) reflect no more than "routine commercial behavior" in the advertising industry and does not constitute a highly offensive or egregious intrusion of privacy. *See Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 991–92 (2011), *modified* June 7, 2011 (citing cases) (the sort of conduct generally arising to the level of invasion of privacy includes the "gratuitous disclosure of a patient's HIV status" or the "improper use of confidential mental health records"). For this reason as well, Plaintiffs' intrusion upon seclusion claim fails.

### 2. Plaintiffs fail to state a claim for violation of CIPA § 631(a) or ECPA § 2511(1) (Counts II and V)

Plaintiffs do not and cannot plausibly allege that OpenX's practices amount to wiretapping under the California Invasion of Privacy Act § 631(a) or the federal Wiretap Act, as amended by the Electronic Communications Privacy Act §§ 2510 et seq.[3] There are four bases for a violation of CIPA § 631(a): (i) intentionally wiretapping with any telegraph or telephone wire; (ii) willfully attempting to read or to learn the contents or meaning of a communication in transit over a wire; (iii) attempting to use or communicate information obtained from the two previous

[3] Courts routinely analyze violations of 18 U.S.C. § 2511(1)(a) and violations of CIPA § 631(a) together. *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051 (N.D. Cal. 2018) ("[A]nalysis for a violation of CIPA is the same as that under the federal Wiretap Act.") (citation omitted).

activities; and (iv) aiding and abetting another in the above conduct. Cal. Penal Code § 631(a). Plaintiffs do not allege that OpenX committed intentional wiretapping. (*See, e.g.*, Compl. ¶¶ 220–246.) To prove a claim under any of the remaining theories of liability, plaintiffs must allege that someone engaged in activity related to "contents" of "communication[s] in transit." *See* Cal. Penal Code § 631(a). Mirroring subsections (ii) and (iii) of CIPA, Plaintiffs also assert a violation of the ECPA for "intentional interception of the content of any electronic communication" and "intentional[] us[e] . . . of Plaintiffs' and Class Members electronic communications." (Compl. ¶¶ 273, 285; 18 U.S.C. § 2511(1)(a)).

None of Plaintiffs' wiretapping theories are viable, and their CIPA Section 631(a) and ECPA claims fail for several independent reasons. First, Plaintiffs do not allege interception of content as defined under the applicable provisions. Second, OpenX cannot be subject to liability under these statutes because it constitutes a party to the alleged communications. Third, Plaintiffs fail to allege that OpenX intercepted any communications while in transit, as required. Finally, the consent of the website publishers defeats Plaintiffs' ECPA claim.

**a. Plaintiffs fail to plausibly allege that OpenX intercepted the "contents" of their alleged electronic communications**

Plaintiffs' CIPA Section 631(a) and ECPA claims fail because Plaintiffs do not plausibly allege that OpenX intercepted the "contents" of their alleged electronic communications, i.e., "the intended message conveyed by the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014); *see also United States v. Reed*, 575 F.3d 900, 917 (9th Cir. 2009) (defining "contents" as the "substance, purport, or meaning" of a communication) (quoting 18 U.S.C. § 2510(8)).[4] Instead, Plaintiffs allege only that OpenX tracked information about their devices, browsers, visits to the Bon Appétit and Covered CA websites (though not any specific URLs), and unspecified "future web browsing activity." This is fatally inadequate. First, as for device and browser information, precedent is clear that such "[r]ecord information regarding the characteristics of the message that is generated in the course of the communication" is not

---

[4] As with the "in transit" element, "content" has the same meaning under CIPA § 631(a) and the ECPA. *Graham v. Noom, Inc.* (*Graham I*), 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021).

"content." *In re Zynga Priv. Litig.*, 750 F.3d at 1106; *see also Yale v. Clicktale, Inc.*, 2021 WL 1428400, at *1, *3 (N.D. Cal. Apr. 15, 2021) (the "date and time of the visit, the duration of the visit, Plaintiff's IP address, her location at the time of the visit, her browser type, and the operating system on her device" were mere record information (citation omitted)). The same is even true for information beyond that which Plaintiffs allege was collected here, such as "the name, address and subscriber number or identity of a subscriber or customer." *Graham I*, 533 F. Supp. 3d at 833 (citation omitted).

Second, Plaintiffs' allegations as to the websites they visited fare no better. Their barebones allegations that their visits to Bon Appétit and Covered CA were tracked are insufficient to allege "content" under CIPA. *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021) (pages viewed do not constitute "content" for purposes of wiretapping liability because they lack substantive communicative valence).

Plaintiffs do not identify any specific URLs they visited that OpenX purportedly tracked. And even if they did, allegations that a defendant intercepted "full-string URLs"—not present here—are insufficient to allege interception of "content" where, as here, the plaintiff does not allege "descriptive URLs that reveal specific information about a user's queries" and that plaintiff herself "conducted the searches or visited the webpages." *King v. Hard Rock Cafe Int'l (USA), Inc.*, 2025 WL 1635419, at *4 (E.D. Cal. June 9, 2025) (citation omitted). Accordingly, Plaintiffs' CIPA Section 631(a) and ECPA claims should be dismissed.

**b. Because OpenX is a party to the alleged communications, it is exempt under both CIPA and ECPA**

OpenX and its publisher partners, such as Bon Appétit, are parties to Plaintiffs' alleged communications, rather than third-party eavesdroppers; accordingly, OpenX is exempt. *See* 18 U.S.C. § 2511(2)(d) ("It shall not be unlawful under this chapter" to intercept an electronic communication "where such person is a party to the communication."); *see also Graham I*, 533 F. Supp. 3d at 828, 831–33 (dismissing CIPA claim under the "party to the communication" exception). Plaintiffs allege they visited two websites—Bon Appétit and Covered CA—deploying OpenX's pixel. (Compl. ¶¶ 157–59, 168.) As acknowledged by the Complaint, online publishers,

such as Bon Appétit, choose to enable OpenX's pixels in order to sell advertising impressions on their sites. (*Id.* ¶¶ 29*, 158, 168, 190, 201.) Plaintiffs voluntarily visited these websites and knowingly transmitted data to the website operators. The website operators are inherently parties to these alleged communications. So too is OpenX. Acting at the direction of the publishers, OpenX is "an extension" of the website operators rather than an outsider "who presses up against a door to listen to a conversation." *Graham I*, 533 F. Supp. 3d at 832; *Graham v. Noom, Inc.* (*Graham II*), 2021 WL 3602215, at * 1 (N.D. Cal. Aug. 13, 2021) (defendant is "not a third-party wiretapper because it is not an outsider, and instead is a software vendor that provides a service that allows [the website operator] to analyze its own data."); *see also Yale*, 2021 WL 1428400, at *3 (same). Indeed, Plaintiffs do not allege that OpenX used any data for any reason other than to facilitate sales of advertising impressions by its publisher partners. (*See, e.g.*, Compl. ¶¶ 32–155.) For this reason as well, Plaintiffs' CIPA Section 631(a) and ECPA claims fail.

#### c. Plaintiffs' conclusory allegations do not adequately allege any interception "in transit"

To plead a claim under CIPA § 631(a) and the ECPA, Plaintiffs must also plead facts showing that OpenX "intercepted" a communication while it was "in transit." *See* Cal. Penal Code § 631(a) ("reads . . . communication while . . . in transit"); 18 U.S.C. §§ 2511(1)(a), (c), (d) ("intercept[ion]" of a communication). "Intercept[ion]" must occur while the communication is being actively transmitted. Once the communication reaches its recipient it is no longer in transit, and a party cannot be liable under either statute. *See* Cal. Penal Code § 631(a); *Adler v. Community.com, Inc.*, 2021 WL 4805435, at *3 (C.D. Cal. Aug. 2, 2021) (communication must be "acquired during transmission") (citation omitted). Courts employ the same standard under both CIPA § 631(a) and ECPA. *See id.*

Plaintiffs' conclusory assertions of "real time" and "immediate[]" interception (*see* Compl. ¶¶ 208, 160) are insufficient where Plaintiffs fail to allege any facts indicating that OpenX intercepted any purported communications in transit. As *Rodriguez v. Google LLC* held, "[u]sing the word 'intercept' repeatedly" is insufficient absent additional specific facts to "make it plausible Google is intercepting their data in transit." 2022 WL 214552, at *2 (N.D. Cal. Jan. 25,

2022); *see also Rosenow v. Facebook, Inc.*, 2020 WL 1984062, at *7 (S.D. Cal. Apr. 27, 2020) (pleading that "Yahoo knowingly used an algorithm to intercept and scan Plaintiff's incoming chat messages for content during transit and before placing them in electronic storage" was conclusory and inadequate) (citation omitted).

Nor could Plaintiffs plead facts sufficient to allege that OpenX intercepted communications while in transit, as required. Per Plaintiffs' own allegations, any collection of Plaintiffs' interactions with websites occurs *after* any communications arrived at their intended destination. According to Plaintiffs, users "communicate" with the host websites by requesting certain URLs from the websites. (*See* Compl. ¶ 86 (alleging the "communications" at issue are users' "full-string URLs and button click events.").) When users enter that URL, the browser sends a GET request to the website, which then responds by sending the website's content back to the user's browser. *See In re Zynga Priv. Litig.*, 750 F.3d at 1101–02. Plaintiffs further allege that it is only once Plaintiffs "reach***ed***" the websites that OpenX allegedly collected their information. (Compl. ¶ 202 ("as soon as [Plaintiff Calcines] reached the Bon Appétit website, the OpenX Tracker collected his IP address").) And Plaintiffs do not allege that OpenX captures a user's individual keystrokes or any other "real-time" information as they are entered into a browser. Any alleged interception thus occurred after the alleged communication was complete.

OpenX's purported conduct here is thus analogous to collecting information about emails after they are received, which courts have held is not an interception "in transit" under ECPA. *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 952 (N.D. Cal. 2014) ("reading emails that have already been received in an email account's inbox does not constitute interception" (cleaned up)). As courts have explained, "[t]here is only a narrow window during which an Email" (or other electronically transmitted data) "interception may occur—the seconds or mili-seconds before which a newly composed message is saved to any temporary location following a send command." *Id.* at 951–52 (citation omitted). Plaintiffs have failed to plausibly allege any interception during the "narrow window," and their CIPA Section 631(a) and ECPA claims fail for this reason as well.

**d. Plaintiffs' ECPA claim also fails because Bon Appétit consented to any alleged interception, as would Covered CA if it had used OpenX's pixel**

Plaintiffs' ECPA claim also fails on the independent basis that no ECPA claim lies where "one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act . . . ." 18 U.S.C. § 2511(2)(d); *see Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1055 (N.D. Cal. 2025), *appeal docketed*, No. 25-2857 (9th Cir. May 2, 2025); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1026 ("[T]he consent of one party is a complete defense to a Wiretap Act claim.") As Plaintiffs acknowledge, Bon Appétit installed OpenX's pixel on its website; if Covered CA had used the OpenX pixel, it too would have been responsible for installing that pixel on its website. (*See* Compl. ¶¶ 29 (alleging OpenX uses pixels "in conjunction with website operators"), 118 (alleging that OpenX's API "enable[s] companies to open up their applications' [or websites'] data and functionality" (despite not bringing any claims related to any APIs)).) Thus, these entities necessarily consented to their participation in Plaintiffs' alleged electronic communications. Accordingly, there is no liability under ECPA. *See Doe I v. Google LLC*, 741 F. Supp. 3d 828, 842 (N.D. Cal. 2024) (dismissing ECPA claim because "alleged interception of private health information only occurs because the health care providers choose to install Google source code on their web properties.").

The ECPA provides a limited exception to one-party consent when the "communication is intercepted for the purpose of committing any criminal or tortious act. . . ." 18 U.S.C. § 2511(2)(d). Plaintiffs attempt to invoke this exception by alleging that OpenX "violate[d] state law, including the [CIPA]." (Compl. ¶ 286.) This is insufficient. *See Lakes*, 777 F. Supp. 3d at 1057 ("[T]he focus [of the exception] is not upon whether the interception itself violated another law; it is upon whether the purpose for the interception—its intended use—was criminal or tortious." (citation omitted and first alteration in original)); *Sussman v. Am. Broad. Co.*, 186 F.3d 1200, 1202 (9th Cir. 1999); *see also Saedi v. SPD Swiss Precision Diagnostics GmbH*, 2025 WL 1141168, at *13 (C.D. Cal. Feb. 27, 2025) (plaintiffs cannot "bootstrap an alleged CIPA violation

to invoke the Crime-Tort Exception in ECPA" as the alleged criminal or tortious purpose be "independent of the interception itself"). Plaintiffs must allege that the "primary motivation or a determining factor in the [defendant's] actions has been to injure plaintiffs tortiously." *Lakes*, 777 F. Supp. 3d at 1057 (citation omitted). While wiretapping for blackmail purposes qualifies for the exception, the act of wiretapping alone, though it may violate other state laws, does not. *See Sussman*, 186 F.3d at 1202–03.

Plaintiffs do not allege any criminal or tortious motive. Rather, they allege that OpenX, publishers, and advertisers collect device data to "enrich" themselves. (*See, e.g.*, Compl. ¶¶ 28, 35, 63, 85, 164, 173.) But courts repeatedly hold that this routine commercial behavior is insufficient to invoke the crime-tort exception. *See, e.g.*, *Lakes*, 777 F. Supp. 3d at 1057–58 (declining to apply crime-tort exception to alleged motive "to improve the effectiveness of its and Meta's advertising and marketing and to monetize the information via targeted advertising, and other means" (cleaned up)); *Roe v. Amgen Inc.*, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024) (same where alleged motive was "to improve [] marketing and advertising efforts" "rather than to injure plaintiffs tortiously or criminally."). Here, too, Plaintiffs have failed to plead facts that could satisfy the crime-tort exception.

**3. Plaintiffs fail to state a claim for violation of CIPA § 638.51(a) (Count III)**

Plaintiffs' CIPA Section 638.51(a) claim fails because Plaintiffs fail to plausibly allege that the OpenX pixel is a pen register under the meaning of the statute. Section 638.51(a) of CIPA bars any person from installing or using "a pen register or a trap and trace device without first obtaining a court order." Plaintiffs allege that the OpenX pixel is a pen register (Compl. ¶¶ 255–56), which is defined as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." CIPA § 638.50(b). This allegation is implausible for several reasons.

First, as *Aviles v. Liveramp, Inc.* explains, courts have historically recognized that "[a] pen register . . . records the numbers dialed from a telephone." 2025 WL 487196, at *2 (Cal. Super.

Jan. 28, 2025) (citation omitted), *tentative adopted*, 2025 WL 487199. *Aviles* further explains that in the context of electronic communications, "[t]he analog of the number dialed by a telephone here is the IP address and related information of a ***website*** accessed by a computer—***but not the computer's own IP address*** or identifying information." *Id*. (emphases added). *Aviles* also confirms that "the category of information collected by pen registers as defined by the statute has [not] been expanded." *Id*. In other words, Plaintiffs would have to allege that the OpenX pixel collects the IP address ***of the websites that Plaintiffs accessed*** in order to even potentially plead a claim under Section 638.51. They do not. Instead, Plaintiffs allege that the OpenX pixel "enabled Defendant to collect Plaintiffs' and California Subclass Members' IP addresses. . . ." (Compl. ¶ 256.) As *Aviles* explained, the "problem with this argument is that it is normal for websites to track the IP addresses of their visitors." *Aviles*, 2025 WL 487196, at *3. "Without alleging that Defendant installed software on *Plaintiff's* device or browser that collected incoming contact information to *Plaintiff's* device, Plaintiff has not alleged anything above and beyond how the internet normally works." *Id*. (dismissing Section 638.51 claim).

The statute's legislative history underscores that this provision does not apply to web pixels. As noted, Section 638.51 prohibits the use of any pen register or trap and trace device "without first obtaining a court order pursuant to Section 638.52. . . ." Cal. Penal Code § 638.51(a). Plaintiffs' illogical interpretation of the statute would require every advertising pixel on the internet to be approved by a court order. But such an order is intended to ensure judicial oversight of law enforcement surveillance, and must "specify" "the person . . . in whose name is listed ***the telephone line***" and "[t]he number and, if known, physical location of ***the telephone line*** to which the pen register or trap and trace device is to be attached. . . .." *Id.* § 638.52(d)(1), (3) (emphases added). The legislative history further makes clear that this provision applies only to telephonic devices.[5] *See People v. Mitchell*, 46 Cal. App. 5th 919, 928 (2020) (statutes are

---

[5] *See, e.g.*, Lashway Decl., Ex. E, AB 929, Assembly Committee on Privacy & Consumer Protection, at 4 ("This bill is intended to authorize . . . emergency orders for pen registers/trap and trace devices used in ***telephonic surveillance*** . . . ."); *id.* at 5 ("pen registers/trap and trace devices are used by law enforcement ***for telephone surveillance***"); Lashway Decl., Ex. F, AB 929, Senate Committee on Public Safety, at 10 (describing "a 'pen register' which allows law enforcement officers to record all outgoing numbers from a particular ***telephone line***" and a 'trap and trace

construed "in a way that most closely comports with the apparent intent of the Legislature." (citation omitted)); *id.* at 929 (California courts "avoid interpreting statutes in a manner that may produce illogical results.").

In line with this reasoning, numerous California courts hold that website pixels do not constitute "pen registers" under CIPA. *See, e.g.*, *Licea v. Hickory Farms LLC*, 2024 WL 1698147, at *4 (L.A. Super. Ct. Mar. 13, 2024) (finding "public policy strongly disputes Plaintiff's potential interpretation of privacy laws as one rendering every single entity voluntarily visited by a potential plaintiff, thereby providing [the user's] IP address for purposes of connecting the website, as a violator"); *Sanchez v. Cars.com*, 2025 WL 487194, at *3 (L.A. Super. Ct. Jan. 27, 2025) (routine web tracker that collected device information not "pen register" under CIPA); *Aviles*, 2025 WL 487196, at *1–3 (tracking beacon that collects IP addresses and device information not a "pen register" or "trap and trace device" under CIPA).

Reading CIPA's definition of pen registers to encompass web pixels would also create conflict between the California Penal Code and the California Consumer Privacy Act (CCPA). The CCPA, which Plaintiffs do not allege OpenX violated, is a comprehensive privacy statute that details the requirements for the collection, retention, and sale of personal information, including in third-party advertising. *See* Cal. Civ. Code §§ 1798.100 et seq. Far from criminalizing web pixels and data brokers, the CCPA specifically contemplates this activity. Cal. Civ. Code §§ 1798.99.82, 1798.99.87; *see also* Compl. ¶ 12. To adopt Plaintiffs' proposed reading of the pen-register provisions of CIPA would thus criminalize activity specifically authorized by the CCPA, and effectively render all online advertising illegal without a court order.[6] But courts "harmonize statutes," not read them to create conflicts. *See In re Jenson*, 24 Cal. App. 5th 266, 275 (2018) (citation omitted). This too confirms that Plaintiffs' Section 638.51 claim cannot stand.

---

device' which allows them to record what numbers have called a specific ***telephone line***").

[6] California law adopts an opt-out—not an opt-in, or consent-only—framework, where consumers must affirmatively opt out from data collection and disclosure, Cal. Civ. Code §§ 1798.120, 1798.135, which would conflict with the consent requirement under CIPA.

**4. Plaintiffs fail to state a claim for Unjust Enrichment (Count IV)**

Plaintiffs do not and cannot plead that they lack an adequate remedy at law; accordingly, they are not entitled to equitable relief under *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). In *Sonner*, the Ninth Circuit held that a plaintiff cannot pursue equitable relief unless they establish that they lack an adequate remedy at law. Plaintiffs fail to allege anywhere in their Complaint that the available remedies at law are inadequate. Nor could they, as such a claim would be contradicted by the fact that Plaintiffs seek monetary damages for their claims. *See In re MacBook Keyboard Litig.*, 2020 WL 6047253, at *3–4 (N.D. Cal. Oct. 13, 2020) (where plaintiffs sought monetary damages, the "availability of an adequate legal remedy [was] clear from the face of the SAC" regardless of allegation "that no adequate legal remedy exists").

Because Plaintiffs' unjust enrichment claim sounds in equity and exclusively provides for equitable relief, that claim must be dismissed. *See Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 907–08 (N.D. Cal. 2021) (dismissing unjust enrichment claim where Plaintiffs did not make a showing that a remedy at law was inadequate or unavailable). Likewise, Plaintiffs' intrusion upon seclusion claim should be dismissed to the extent Plaintiffs seek injunctive relief under that claim (*see* Comp. ¶ 231 (seeking "all relief available" for intrusion upon seclusion)). *See In re MacBook Keyboard Litig.*, 2020 WL 6047253, at *3–4 (*Sonner* extends to preclude equitable relief where monetary damages would compensate plaintiff, and dismissing UCL claim in its entirety and remaining claims "to the extent they seek an injunction, restitution, or other equitable relief.")

## V. CONCLUSION

Because Plaintiffs lack Article III standing and fail to state any claim for relief, OpenX respectfully asks the Court to dismiss Plaintiffs' Complaint in its entirety.

Dated: October 3, 2025

MORRISON & FOERSTER LLP

By: */s/ Tiffany Cheung*
Tiffany Cheung
Camila A. Tapernoux

*Attorneys for Defendant*
OPENX TECHNOLOGIES, INC.