TIFFANY CHEUNG (CA SBN 211497)
TCheung@mofo.com
CAMILA A. TAPERNOUX (CA SBN 299289)
CTapernoux@mofo.com
MORRISON & FOERSTER LLP
425 Market Street,
San Francisco, California  94105-2482
Telephone:    415.268.7000
Facsimile:    415.268.7522

Attorneys for Defendant
OPENX TECHNOLOGIES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KILEY KRZYZEK AND CHRISTIAN CALCINES, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiffs,<br><br>v.<br><br>OPENX TECHNOLOGIES, INC.,<br><br>Defendant. | Case No. 3:25-cv-05588-SI<br><br>**DEFENDANT OPENX TECHNOLOGIES, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: January 16, 2026<br>Time: 10:00 a.m.<br>Courtroom: 1 - 17th Floor<br>Judge: The Honorable Susan Illston<br><br>Action Filed: July 2, 2025 |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT on January 16, 2026, at 10:00am, before the Honorable Susan Illston, United States District Judge, in Courtroom 1 at the United States District Court, Northern District of California, located on the 17th Floor of the San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, California, Defendant OpenX Technologies, Inc. will and hereby does move this Court for an order dismissing without leave to amend the First Amended Class Action Complaint filed by Plaintiffs Kiley Krzyzek and Christian Calcines individually and on behalf of all other persons similarly situated.

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, and all pleadings, papers, and records filed in this action, and other such evidence and argument as may be presented at the hearing on this Motion.

Dated: November 21, 2025                    MORRISON & FOERSTER LLP

By:  /s/ Tiffany Cheung
Tiffany Cheung
Camila A. Tapernoux

*Attorneys for Defendant*
OPENX TECHNOLOGIES, INC.

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND .................................................................................................. 3

    A.    OpenX operates an independent ad exchange.......................................... 3

    B.    OpenX's pixel facilitates creation of anonymous device profiles that cannot be associated with any individual person's identity................................ 3

    C.    Plaintiffs' FAC consists primarily of vague allegations about data brokers in general ................................................................................................. 4

    D.    Plaintiffs' alleged claims and experiences .............................................. 5

III.  LEGAL STANDARD........................................................................................... 7

    A.    Rule 12(b)(1) ........................................................................................... 7

    B.    Rule 12(b)(6) ........................................................................................... 8

IV.   ARGUMENT ....................................................................................................... 8

    A.    Because Plaintiffs Fail to Establish Article III Standing, Their Claims Must Be Dismissed for Lack of Subject Matter Jurisdiction ........................... 8

        1.    Plaintiffs lack standing because they do not identify any "highly offensive" privacy harm ............................................................... 9

    B.    Plaintiffs' FAC Fails to State a Claim.................................................... 11

        1.    Plaintiffs do not allege the reasonable expectation of privacy or egregious conduct required for Intrusion Upon Seclusion (Count I)........ 11

        2.    Plaintiffs fail to state a claim for violation of CIPA § 631(a) or ECPA § 2511(1) (Counts II and V) ........................................................... 15

        3.    Plaintiffs fail to state a claim for violation of CIPA § 638.51(a) (Count III) ................................................................................... 21

        4.    Plaintiffs fail to state a claim for Unjust Enrichment (Count IV) ............. 23

V.    CONCLUSION................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adler v. Community.com, Inc.*,
2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) ........................................................................ 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................................. 8

*Aviles v. Liveramp, Inc.*,
2025 WL 487196 (Cal. Super. Jan. 28, 2025) ........................................................ 21, 22, 23

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................................. 8

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ............................................................................................................. 8

*Cline v. Reetz-Laiolo*,
329 F. Supp. 3d 1000 (N.D. Cal. 2018) ............................................................................. 15

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ............................................................................... 20

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .............................................................................................. 11

*Farst v. Autozone, Inc.*,
700 F. Supp. 3d 222 (M.D. Pa. 2023) ................................................................................ 12

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011) ............................................................................................. 14

*In re Google Location Histor. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) ............................................................................... 13

*In re Google Priv. Pol'y Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) ................................................................................. 14

*Graham v. Noom, Inc.* (*Graham I*),
533 F. Supp. 3d 823 (N.D. Cal. 2021) .......................................................................... 16, 17

*Graham v. Noom, Inc.* (*Graham II*),
2021 WL 3602215 (N.D. Cal. Aug. 13, 2021) ................................................................... 17

*Harris v. KM Indus., Inc.*,
980 F.3d 694 (9th Cir. 2020) ................................................................................................ 7

*Heeger v. Facebook, Inc.*,
    509 F. Supp. 3d 1182 (N.D. Cal. 2020) ............................................................................ 11, 13

*Hernandez v. Hillsides, Inc.*,
    47 Cal. 4th 272 (2009) ............................................................................................................. 11

*Hill v. Nat'l Collegiate Athletic Ass'n*,
    7 Cal. 4th 1 (1994) ................................................................................................................... 11

*Hubbard v. Google LLC*,
    2024 WL 3302066 (N.D. Cal. July 1, 2024) ........................................................................ 12

*In re iPhone Application Litig. (iPhone II)*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ................................................................................ 14

*In re Jenson*,
    24 Cal. App. 5th 266 (2018) ................................................................................................... 23

*Ji v. Naver Corp.*,
    2022 WL 4624898, at *7 (N.D. Cal. Sep. 30, 2022) ........................................................... 13

*Khamooshi v. Politico LLC*,
    No. 24-cv-07836-SK, 2025 WL 2822879 (N.D. Cal. Oct. 2, 2025) ...................................... 9

*King v. Hard Rock Cafe Int'l (USA), Inc.*,
    2025 WL 1635419 (E.D. Cal. June 9, 2025) ......................................................................... 17

*Lakes v. Ubisoft, Inc.*,
    777 F. Supp. 3d 1047 (N.D. Cal. 2025),
    *appeal docketed*, No. 25-2857 (9th Cir. May 2, 2025) ................................................... 19, 20

*Licea v. Hickory Farms LLC*,
    2024 WL 1698147 (L.A. Super. Ct. Mar. 13, 2024) ............................................................. 22

*Lightoller v. JetBlue Airways Corp.*,
    2023 WL 3963823 (S.D. Cal. June 12, 2023) ....................................................................... 11

*Low v. LinkedIn Corp. (Low I)*,
    2011 WL 5509848 (N.D. Cal. Nov. 11, 2011) ...................................................................... 10

*Low v. LinkedIn Corp. (Low II)*,
    900 F. Supp. 2d 1010 (N.D. Cal. 2012) ........................................................................... 13, 14

*In re MacBook Keyboard Litig.*,
    2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) .................................................................. 23, 24

*Mikulsky v. Noom, Inc. (Mikulsky I)*,
    682 F. Supp. 3d 855 (S.D. Cal. 2023) ................................................................................. 9, 10

*Mikulsky v. Noom, Inc.* (*Mikulsky II*),
    2024 WL 251171 (S.D. Cal. Jan. 22, 2024) ................................................................ 10

*NovelPoster v. Javitch Canfield Grp.*,
    140 F. Supp. 3d 938 (N.D. Cal. 2014) ...................................................................... 19

*People v. Mitchell*,
    46 Cal. App. 5th 919 (2020) ...................................................................................... 22

*Popa v. Microsoft Corp.*,
    153 F.4th 784 (9th Cir. 2025) ................................................................ 9, 10, 11, 14

*Rodriguez v. Google LLC*,
    2022 WL 214552 (N.D. Cal. Jan. 25, 2022) .............................................................. 18

*Roe v. Amgen Inc.*,
    2024 WL 2873482 (C.D. Cal. June 5, 2024) .............................................................. 21

*Rosenow v. Facebook, Inc.*,
    2020 WL 1984062 (S.D. Cal. Apr. 27, 2020) ............................................................. 18

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
    2025 WL 1141168 (C.D. Cal. Feb. 27, 2025) ............................................................. 20

*Saeedy v. Microsoft Corp.*,
    2023 WL 8828852 (W.D. Wash. Dec. 21, 2023) ......................................................... 11

*Sanchez v. Cars.com*,
    2025 WL 487194 (L.A. Super. Ct. Jan. 27, 2025) ...................................................... 22

*Semien v. Pubmatic, Inc.*,
    No. 3:25-cv-03164 (N.D. Cal.) ..................................................................................... 1

*Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*,
    733 F.3d 1251 (9th Cir. 2013) ...................................................................................... 8

*Sharma v. Volkswagen AG*,
    524 F. Supp. 3d 891 (N.D. Cal. 2021) ...................................................................... 24

*Smith v. Facebook, Inc.*,
    745 F. App'x 8 (9th Cir. 2018) .................................................................................. 13

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ...................................................................................... 23

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ...................................................................................................... 8

*Sussman v. Am. Broad. Co.*,
    186 F.3d 1200 (9th Cir. 1999)................................................................................................ 20

*Thomas v. Papa Johns Int'l, Inc.*,
    2024 WL 2060140 (S.D. Cal. May 8, 2024)........................................................................... 12

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ................................................................................................................. 8

*United States v. Google LLC*,
    778 F. Supp. 3d 797 (E.D. Va. 2025)....................................................................................... 1

*United States v. Reed*,
    575 F.3d 900 (9th Cir. 2009).................................................................................................. 16

*Warren v. Fox Fam. Worldwide, Inc.*,
    328 F.3d 1136 (9th Cir. 2003).................................................................................................. 7

*In re Yahoo Mail Litig.*,
    7 F. Supp. 3d 1016 (N.D. Cal. 2014) ...................................................................................... 19

*Yale v. Clicktale, Inc.*,
    2021 WL 1428400 (N.D. Cal. Apr. 15, 2021) .................................................................. 16, 17

*Yoon v. Lululemon USA, Inc.*,
    549 F. Supp. 3d 1073 (C.D. Cal. 2021)................................................................................... 16

*In re Zynga Priv. Litig.*,
    750 F.3d 1098 (9th Cir. 2014)........................................................................................... 16, 19

**Statutes**

18 U.S.C. § 2511(1)(a)............................................................................................................. 15, 18

18 U.S.C. § 2511(1)(c).................................................................................................................. 18

18 U.S.C. § 2511(1)(d).................................................................................................................. 18

18 U.S.C. § 2511(2)(d)...................................................................................................... 17, 19, 20

Cal. Civ. Code § 1798. .............................................................................................................. 3, 23

Cal. Penal Code § 631(a) ......................................................................................................... 15, 18

Cal. Penal Code § 638.50(b) ......................................................................................................... 21

Cal. Penal Code § 638.51(a) ......................................................................................................... 22

Cal. Penal Code § 638.52(d) ......................................................................................................... 22

**Legislative Materials**

Assemb. Comm. on Privacy & Consumer Protection, Analysis of Assem. B. 929, 2015–2016 Leg., Reg. Sess. (Cal. 2015)......................................................................................... 22

S. Comm. on Pub. Safety, Analysis of Assem. B. 929, 2015–2016 Leg., Reg. Sess. (Cal. 2015) ................................................................................................................................. 22

## I.    INTRODUCTION

Despite having a fulsome opportunity to amend, Plaintiffs Kiley Krzyzek's and Christian Calcines' First Amended Complaint ("FAC") remains fatally deficient. At its core, the FAC alleges nothing more than that OpenX collected Plaintiffs' anonymized IP addresses, devices, browser information, and unspecified web-browsing activity. The Ninth Circuit has held that this routine conduct, expected by reasonable consumers, is wholly insufficient to sustain any of Plaintiffs' claims. The remainder of the FAC, like the original Complaint (largely copy-pasted from those filed by the same counsel in *Semien v. Pubmatic, Inc.*, No. 3:25-cv-03164 (N.D. Cal.) and several other recent cases) still consists of nothing more than sweeping allegations based on generalized commentary about the online advertising industry—not about OpenX (much less Plaintiffs' experiences). Plaintiffs' new allegations, far from curing the inadequacies of the original Complaint, do not support their claims and reflect a fundamentally inaccurate description of how cookie technology works. In sum, Plaintiffs have failed to plausibly allege any concrete harm that could confer standing for any of their causes of action, and have failed to state a claim under relevant law.

OpenX operates an independent advertising exchange that enables website publishers to sell digital ad space on properties they own and operate, and facilitates advertisers' ability to buy and display their advertisements on that digital ad space. These services provide significant, long-recognized benefits: they help online publishers monetize their properties and create quality low- or no-cost content for online users to enjoy; they help advertisers reach new audiences and drive online commerce; and they help deliver relevant, engaging, and safe advertisements for online users to view. In short, as courts have recognized, advertising exchanges like OpenX's have partnered directly with online publishers to "fuel[] the Internet's growth" since its inception. *United States v. Google LLC*, 778 F. Supp. 3d 797, 813 (E.D. Va. 2025).

In order to offer these valuable services, OpenX's publisher partners must send OpenX certain information about their online properties and, on an anonymized basis, the devices used to visit them. But these data collection practices are limited, conducted at the direction and with the

MEMORANDUM OF POINTS & AUTHORITIES IN
SUPPORT OF OPENX'S MOTION TO DISMISS                1
3:25-CV-05588-SI

participation of OpenX's publisher partners, and within the reasonable expectations of online users. As the FAC repeatedly acknowledges, OpenX collects only non-identifying information tied to devices—not individuals. In other words, while publishers may provide OpenX with access to certain information about the online activity of device ABC123 and OpenX may use that information to help its publishers serve ads on that device, OpenX does not know—and has no way of knowing—that device ABC123 is used by any specific individual. Likewise, while OpenX's technology may respond to third-party requests to perform "cookie syncing"—that is, to determine whether a device for which it has assigned the pseudonym ABC123 is the same as a device for which another entity has assigned the pseudonym XYZ789—OpenX has no way of knowing that devices ABC123 or XYZ798 are used by any specific individual(s). This publisher-directed collection of anonymous device information is expected by reasonable online users, as evidenced by the many federal and state consumer privacy laws that specifically reference and permit it in the context of online advertising. Accordingly, as courts across this Circuit have recognized, there is no protectable privacy interest in such non-identifying data.

Despite this, Plaintiffs attempt to recast OpenX's routine, industry-standard practices as privacy violations. But the FAC, which relies primarily on speculation about "data brokers" in general rather than factual allegations about OpenX, is critically deficient. First, it does not allege any concrete injury to either Plaintiff sufficient to confer Article III standing. Next, the FAC fails to plausibly allege (1) any collection or disclosure of personally identifiable information, (2) interception of the "contents" of any communication in transit, and (3) that OpenX's technology is a "pen register" under the California Invasion of Privacy Act ("CIPA"), a reading that would be contrary to conventional methods of statutory interpretation and the stated intentions of the California Legislature. Finally, Plaintiffs' unjust enrichment claim fails for the independent reason that Plaintiffs have adequate remedies at law and cannot plead otherwise. Moreover, Plaintiffs' FAC remains inadequate despite the benefit of OpenX's motion to dismiss the original Complaint, which detailed each of these pleading defects. For all these reasons, the FAC should be dismissed in its entirety, with prejudice.

MEMORANDUM OF POINTS & AUTHORITIES IN
SUPPORT OF OPENX'S MOTION TO DISMISS          2
3:25-CV-05588-SI

## II.    BACKGROUND

### A.    OpenX operates an independent ad exchange

OpenX is an independent supply-side platform ("SSP") that operates an advertising exchange. As an SSP, OpenX acts at the direction of its online publisher partners—such as websites that make digital content and information available to consumers—by providing them with tools to sell their advertising space to online advertisers. OpenX facilitates these online advertising transactions by providing a technical infrastructure that connects publishers with advertisers. Publishers maintain primary control over whether and how OpenX's technology is deployed on their sites, and they control the disclosures of such practices.

In carrying out this role, OpenX does not—and could not—sell the data of online users because, as Plaintiffs repeatedly acknowledge, OpenX does not maintain any files that identify individual people. Instead, when directed by one of its publisher partners, OpenX collects certain anonymized device information, amongst other information about the publisher property and advertising space being sold on it. Using this limited information on behalf of its publisher partners, OpenX is able to help improve the relevance and efficacy of digital advertising on the publisher property. For example, it helps to ensure that advertisements displayed on the publisher property are safe, relevant, and appropriately fit the size of the available advertising space.

Both Congress and state legislatures have passed legislation expressly permitting and regulating the type of interest-based advertising that OpenX facilitates. For example, the California Consumer Privacy Act ("CCPA") recognizes that businesses may engage in "cross-context behavioral advertising" (defined as "the targeting of advertising to a consumer based on [their activity] across businesses, [] websites, applications, or services"). *See* Cal. Civ. Code § 1798.140(k). Similarly, California's data broker registration law—Cal. Civ. Code § 1798.99.80 *et seq.*—presupposes the legality of businesses that facilitate such advertising, requiring them to register and provide transparency into their practices.

### B.    OpenX's pixel facilitates creation of anonymous device profiles that cannot be associated with any individual person's identity

A pixel is a piece of software code embedded on a webpage. When a user loads a

webpage that has a pixel installed on it, the pixel can then send basic technical data (such as the IP address and browser type of the user visiting the webpage) to that pixel's server. As Plaintiffs acknowledge, a website's publisher (not OpenX) may elect to install an OpenX pixel (which Plaintiffs term the "OpenX Tracker") on its website. (*See* FAC ¶¶ 65, 85.) That is, OpenX's pixel is only implemented if a publisher (itself or via a vendor) affirmatively chooses to use it. Any collection of limited, device-level information occurs at the publisher's direction, and consistent with the publisher's own user-facing disclosures in their terms and conditions and privacy policies.

After a user has reached a website deploying the OpenX pixel (*id.* ¶¶ 168, 212), the website publisher may enable OpenX to place cookies on the consumer's browser or otherwise record limited browser and device-level information. (*Id.* ¶ 169.) A cookie is a small text file that can be placed on a user's browser to store non-identifying information such as pseudonymous identifiers. This anonymous information cannot be tied back to any specific individual. OpenX's technology does not process directly identifiable data and is not equipped to identify real individuals from device or browser identifiers. Plaintiffs do not plausibly allege otherwise. Instead, Plaintiffs make many sweeping allegations about what OpenX may theoretically do with this limited information. (*See, e.g., id.* ¶¶ 98-99, 156.) Nowhere, however, do they explain how OpenX could use this data to match any device information or alleged device "profiles" to a specific person. For example, Plaintiffs make the unsupported claim that OpenX used "information about [Plaintiffs'] device[s] [and] browser[s]" to "identify" each named Plaintiff (*see id.* ¶¶ 203, 205, 215, 219). But they do not and cannot plausibly allege how OpenX does so because, as Plaintiffs themselves acknowledge, those identifiers are not connected to names, contact information, or other personally identifying details. (*See, e.g., id.* ¶¶ 38-39, 42.) Thus, Plaintiffs fail to plausibly allege that OpenX deanonymizes any data or specifically identified either named Plaintiff (or *any* individual persons).

### C. Plaintiffs' FAC consists primarily of vague allegations about data brokers in general

Instead, paragraph after paragraph of the FAC consist of conclusory allegations with no

factual support at all, much less any support for how those allegations relate to the named Plaintiffs' experiences. Several pages are devoted to generalized allegations about data brokers and broad critiques of the online advertising industry at large.[1] (*Id.* ¶¶ 10–33.) For instance, Plaintiffs reference a "report" analyzing ten non-specified "data brokers" and stating that they advertise data for sale on U.S. individuals' sensitive demographic information—but Plaintiffs do not allege that *OpenX* does so. (*Id.* ¶ 16.) Several more pages of Plaintiffs' FAC set forth allegations about OpenX's purported activities that have no bearing on Plaintiffs' actual claims. As one example, while Plaintiffs allege that "OpenX [] collects profile data" as well as "hashed email addresses" (*id.* ¶¶ 74, 146-147), they do not allege that OpenX collected *their* profile data or email addresses. (*See id.* ¶¶ 199-224.) Plaintiffs likewise expend many paragraphs making allegations about data that OpenX allegedly tracks via mobile applications and uses for so-called "ID Bridging" (*id.* ¶¶ 123-144). But, again, neither Plaintiff alleges that OpenX tracked *their* activity or information on mobile applications. (*See id.* ¶¶ 199-224.)

### D.    Plaintiffs' alleged claims and experiences

Each named Plaintiff alleges that they visited websites that purportedly had an OpenX pixel installed. Plaintiff Calcines alleges that the Bon Appétit website had an OpenX pixel installed when he visited, and that the OpenX pixel installed cookies onto his browser. (*Id.* ¶¶ 210-211.) The only information he alleged the OpenX pixel collected is his IP address, device and browser information, article selections, and unspecified "future web browsing activity." (*Id.* ¶¶ 212, 215, 217, 220.) He does not allege any specific URLs (*e.g.*, specific pages on the Bon Appetit website) that he visited and that he alleges were tracked by OpenX—let alone that those URLs contained any sensitive information related to him. In addition to the website bonappetit.com, he alleges only that he also visited apartmenttherapy.com, foxnews.com; and businessinsider.com. (*Id.* ¶ 221.) Indeed, the only specific URL identified in the FAC—which

---

[1] While Plaintiffs allege that OpenX is a data broker registered with the State of California (FAC ¶ 47) and that "data brokers like Defendant" "compile" information about devices' activity "across the Internet" (*id.* ¶¶ 21, 23), they do not allege that OpenX violated any statute specifically regulating data brokers. Indeed, OpenX's registration status further confirms that far from violating any privacy statutes, it operates a business long recognized and regulated in California, and complies with applicable regulations.

neither Plaintiff alleges they visited—is a Bon Appétit webpage containing a recipe for "How to Make DIY Pop-Tarts Like Taylor Swift." (*Id.* ¶ 120.)

Plaintiff Krzyzek alleges that she visited the Covered California website to apply for health insurance. She alleges that the Covered California website had an OpenX pixel installed when she visited, and that the OpenX pixel installed cookies onto her browser. (*Id.* ¶¶ 199-203.) Similar to Plaintiff Calcines, the only data she alleges OpenX collected is her device and browser information, her visit to Covered California, and unspecified "future web browsing activity." (*Id.* ¶¶ 203, 206.) These allegations are inadequate to establish standing or state a claim for the reasons discussed below. Additionally, Covered California does not use the OpenX pixel, and Plaintiff Krzyzek's allegations do not show otherwise. While the following information is unnecessary for deciding the present motion, the fundamental inaccuracies in Plaintiffs' allegations are worth noting

Plaintiff Krzyzek's only support for her allegations that Covered California installed an OpenX pixel on her browser is an unsubstantiated third-party report from "The Markup." That report expressly states that its "results should not be taken as the final word on potential privacy violations by a given website. Rather, they should be treated as an initial automated inspection that requires further investigation before a definitive claim can be made." (*Id.* ¶ 177 (citing https://github.com/the-markup/investigation-covered-california-linkedin-tracker/blob/main/blacklight-scans/20250224-141900-www.coveredca.com/report.md.) Plaintiffs did no such "further investigation." Instead, the FAC asserts only conclusory allegations that Plaintiffs' counsel's so-called "investigation" of The Markup's data shows that when "a user reaches the Covered California website, the OpenX Tracker loads tracking cookies onto the user's browser[.]" (*Id.* ¶ 180.) Plaintiffs go on to provide screenshots that provide no support for this assertion because they do not connect the Covered California website to any OpenX pixel. (*Id.*)

First, the screenshot at paragraph 180 shows nothing more than that the *browser* being used contained a cookie from the OpenX domain at the time the screenshot was taken. It does not show that the cookie was installed by an OpenX pixel embedded on the Covered California

website. In fact, it provides no information about how or by whom that cookie was installed on the browser. In other words, the OpenX cookie could have been installed by an OpenX pixel from *any* website that browser had visited. The FAC acknowledges as much, going on to include a second screenshot that Plaintiffs allege shows that Covered California installed its *own* first party cookies onto the test browser—without alleging that Covered California installed any *OpenX* cookie on the test browser. (*Id.* ¶ 181.) Plaintiffs then provide a third screenshot they allege shows that the OpenX cookie collected the users' IP address and device information "on the Covered California website." (*Id.* ¶ 182.) Yet that screenshot only shows an interaction between OpenX and the third party domain doubleclick.net. Once again, it does now show that any information was collected about (or upon) the user's visit to the *Covered California* website. The final screenshot Plaintiffs added to their FAC likewise does not reflect anything about Covered California, and Plaintiffs do not allege otherwise. (*Id.* ¶ 183.)

* * *

Finally, both Plaintiffs allege in wholly conclusory terms that OpenX used nothing more than their device and browser information to "identify" and "deanonymize" them. (*Id.* ¶¶ 205, 219). But Plaintiffs do not provide any explanation of how such "deanonymization" could have occurred, and these allegations are implausible given Plaintiffs' acknowledgment that the OpenX pixel collected only anonymized device, browser, and "web browsing information." (*Id.* ¶¶ 203, 215.)

## III.   LEGAL STANDARD

### A.   Rule 12(b)(1)

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(1) if the allegations are "insufficient on their face to invoke federal jurisdiction." *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020) (citation omitted). In evaluating a motion to dismiss for lack of subject matter jurisdiction, courts apply the same lens as under Rule 12(b)(6), accepting all non-conclusory, factual allegations as true and construing them in the light most favorable to Plaintiffs. *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). Article III

standing is a jurisdictional requirement, and thus a Rule 12(b)(1) motion is proper where plaintiffs cannot demonstrate standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

### B.    Rule 12(b)(6)

For a complaint to survive a motion to dismiss under Rule 12(b)(6), it must "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plausible claim for relief "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Factual allegations must rise "above the speculative level" to raise a right to relief. *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). When a complaint pleads facts that are "merely consistent with a defendant's liability," it "stops short" of entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). A court may also disregard "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (citation omitted).

## IV.    ARGUMENT

### A.    Because Plaintiffs Fail to Establish Article III Standing, Their Claims Must Be Dismissed for Lack of Subject Matter Jurisdiction

"To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted). A "concrete" injury must be "'real, and not abstract,'" not merely "procedural." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424, 440 (2021) (quoting in part *Spokeo, Inc.*, 578 U.S. at 340–41). Plaintiffs bear the burden of "demonstrat[ing] standing for each claim that they press and for each form of relief that they seek. . . ." *Id.* at 431.

Alleging a statutory violation alone is insufficient. "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 426 (quoting *Spokeo, Inc.*, 578 U.S. at 340). To adequately plead injury based on a privacy violation—the grounds for all of Plaintiffs'

causes of action in this case—a plaintiff must "identify the 'specific personal information [they] disclosed that implicates a protectable privacy interest.'" *Mikulsky v. Noom, Inc.* (*Mikulsky I*), 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) (citation omitted).

### 1. Plaintiffs lack standing because they do not allege any "highly offensive" privacy harm

As the Ninth Circuit recently confirmed in *Popa v. Microsoft Corp.*, in order to sufficiently allege a concrete harm for privacy claims (as brought by Plaintiffs here), a plaintiff must allege a harm protected by a traditional common-law privacy tort that would be "highly offensive" to a reasonable person. 153 F.4th 784, 791 (9th Cir. 2025). *Popa* controls here because the data collection alleged in that case covered not only the exact categories at issue here, but was significantly broader than anything Plaintiffs allege in this action. Specifically, Popa alleged that Microsoft collected "website visitor's electronic communications with the ... website, including their mouse movements, clicks, keystrokes ..., URLs of web pages visited," "the device the user accessed the website on, the type of browser the user accessed the website on, the operating system of the device used to access the website, the country where the user accessed the website from, a user's mouse movements, a user's screen swipes, text inputted by the user on the website, and how far down a webpage a user scrolls." *Id*. at 786.

Despite the more extensive data allegedly collected by Microsoft in *Popa*, the Ninth Circuit upheld the trial court's dismissal of common law and statutory privacy claims because the information at issue did not include anything "embarrassing, invasive, or otherwise private[.]" *Id*. at 791. *Popa* conclusively reaffirmed that the alleged collection of the exact type of information at issue here (and more) is not "highly offensive" and thus insufficient for standing. *Id*. Subsequent cases have confirmed that claims for unjust enrichment premised on the same alleged privacy harms as statutory and common law privacy claims (like Plaintiffs' unjust enrichment claim here) are subject to the same analysis. *Khamooshi v. Politico LLC*, No. 24-cv-07836-SK, 2025 WL 2822879, at *3 (N.D. Cal. Oct. 2, 2025) (dismissing unjust enrichment and other claims derivative of the privacy causes of action for failure to allege any highly offensive data collection, noting "*Popa* controls the analysis" for all such claims).

MEMORANDUM OF POINTS & AUTHORITIES IN
SUPPORT OF OPENX'S MOTION TO DISMISS                    9
3:25-CV-05588-SI

*Popa's* reasoning applies with full force here, and it forecloses all of Plaintiffs' claims. Plaintiffs here allege only that OpenX collected information about their devices, browsers, and unspecified "web browsing activity" —a small subset of the type of nonprivate information allegedly collected in *Popa*. (*Supra* II.D.) Plaintiffs do not allege any specific personal information was collected by OpenX that would be "highly offensive" or that "implicates a protectable privacy interest." *Popa*, 153 F.4th at 791; *see also Mikulsky I*, 682 F. Supp. 3d at 864-865. As detailed above, they do not identify any specific URLs they visited, much less that they visited any URLs reflecting sensitive data. Instead, they make only the conclusory allegation that they have a privacy interest in "precluding the dissemination and/or misuse of their sensitive, confidential communications and information," and "interact[ing] with various internet sites without . . . surveillance." (*See* FAC ¶ 238.)

They likewise do not allege that any of their personal information was collected, and do not plausibly allege that their data was ever deanonymized. Plaintiffs allege only that OpenX "provided Partner Trackers with identity resolution services so that those entities **could** deanonymize the data it collected" on them. (FAC ¶¶ 204, 216 (emphasis added).) And while they conclusorily allege that OpenX "deanonymize[d]" Plaintiffs' data (*id*.), this is insufficient where they fail to plausibly explain how their data could in fact be deanonymized given that they allege only that OpenX collected anonymized information about their devices, browsers, and URLs visited. *Low v. LinkedIn Corp.* (*Low I*) makes this clear. There, the plaintiff alleged that his anonymous LinkedIn ID was combined with his browsing history. *Low* held this insufficient for standing because plaintiff did "not allege[] *how* third party advertisers would be able to infer [his] personal identity" from that combination. 2011 WL 5509848, at *3 (N.D. Cal. Nov. 11, 2011); *see also Saeedy*, 2023 WL 8828852, at *4 ("anonymized data" insufficient to support standing); *Mikulsky v. Noom, Inc.* (*Mikulsky II*), 2024 WL 251171, at *4 (S.D. Cal. Jan. 22, 2024) (dismissing CIPA claim for lack of standing because there is no "protectible privacy interest" in "non-individually identifiable data").

*Popa* held that even allegations of much broader data collection are insufficient, and

confirms that Plaintiffs' threadbare claims are inadequate to allege any "highly offensive" harm protected by a common law privacy analog. *Popa*, 153 F.4th at 791; *see also Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020) (no standing because "there is no legally protected privacy interest in IP addresses."); *Lightoller v. JetBlue Airways Corp.*, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) (no Article III injury from collecting data about plaintiff browsing flight information); *Saeedy v. Microsoft Corp.*, 2023 WL 8828852, at *5 (W.D. Wash. Dec. 21, 2023) (collection of "internet browsing activities, internet searches, . . . online shopping behavior, . . . keyword search terms, URLs, and unique user identifiers and cookies" not sufficient (citation omitted)). For this reason alone, all of Plaintiffs' claims must be dismissed for lack of standing.

### B.    Plaintiffs' FAC Fails to State a Claim

#### 1.    Plaintiffs do not allege the reasonable expectation of privacy or egregious conduct required for Intrusion Upon Seclusion (Count I)

Plaintiffs' intrusion upon seclusion claim requires them to clear a "high bar" and establish: (i) a reasonable expectation of privacy in a legally protected privacy interest; and (ii) a highly offensive or serious intrusion (including any justification or other relevant interests). *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287–89 (2009); *see also In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020). When determining whether a reasonable expectation of privacy exists, "courts consider a variety of factors, including the customs, practices, and circumstances surrounding a defendant's particular activities." *Facebook Tracking Litig.*, 956 F.3d at 601–02. To determine whether an alleged privacy violation constitutes a highly offensive or serious intrusion, courts ask whether the alleged violation was sufficiently serious in nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right. *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 37 (1994). Plaintiffs' allegations fail as to both of the required elements.

#### a.    Plaintiffs do not allege a reasonable expectation of privacy in a legally protected privacy interest

While Plaintiffs make sweeping, conclusory assertions that OpenX "amass[ed] . . .

electronic information reflecting all aspects of [their] lives" (FAC ¶ 243), the only information Plaintiffs actually allege that OpenX collected about them—at the direction of the website publishers—is information about their devices, browsers, visits to the Bon Appétit, Covered CA, Fox, Apartment Therapy, and Business Insider websites (though not any specific URLs), and unspecified "future web browsing activity." (*Supra* II.D.) But "[c]ontemporary internet browsing involves the collection of users' data, including by tracking users across the internet, *and a reasonable user should expect as much*." *Hubbard v. Google LLC*, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024). Indeed, the caselaw on point—discussed in detail below—focuses on the alleged collection of many more categories of information than Plaintiffs allege here (such as names, addresses, and emails), and even then finds no reasonable expectation of privacy.

Plaintiffs cannot reasonably expect privacy in activities like visiting Bon Appétit, nor do they allege how or why they could. Indeed, the only URL from Bon Appétit identified in the FAC (which neither Plaintiff alleges visiting) provides a recipe for Pop-Tarts. (FAC ¶ 120.) Courts have held that analogous activity such as "[s]hopping on a public website, like shopping in a public store, is not an activity one can reasonably expect to keep private from the retailer." *See Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, at *2 (S.D. Cal. May 8, 2024) (quoting *Farst v. Autozone, Inc.*, 700 F. Supp. 3d 222, 230 (M.D. Pa. 2023)). The "difference in fora between online and in-person shopping outlets does not transform the generally public nature" of the act into a private one. *See Farst*, 700 F. Supp. 3d at 230 (citing RESTATEMENT (SECOND) OF TORTS § 652B).

Plaintiffs' allegations as to Covered California should be given no credence given that Plaintiffs have not and cannot allege that Covered California has implemented the OpenX pixel. (*Supra* II.D.) But even so, Plaintiffs allege only that Covered California "is a website where Californians can shop for health insurance." (FAC ¶ 175.) Plaintiff Krzyzek alleges only that she

"visited the Covered California website . . . to apply for health insurance." (*Id.* ¶ 199.) She does not allege what URLs she visited, nor that she viewed or provided any sensitive or private information during her visit to Covered California. She too has failed to allege a reasonable expectation of privacy in the mere fact that she visited this website. *Smith v. Facebook, Inc.* is instructive. 745 F. App'x 8, 9 (9th Cir. 2018). In *Smith*, the plaintiff similarly alleged that Facebook violated privacy laws by collecting browsing data from "healthcare-related websites." The court rejected plaintiff's arguments that "search[ing] and view[ing] publicly available health information" (similar to Plaintiff Krzyzek's allegations of her visit to the Covered California website) was "sensitive." The same result is dictated here.

Indeed, courts consistently hold that there is no reasonable expectation of privacy in the type of information Plaintiffs allege that OpenX collected at its publisher partners' direction. For example, in *Ji v. Naver Corp.*, the court held that plaintiffs failed to sufficiently plead that collection of "user and device identifiers"—similar to the device and browser information Plaintiffs allege here—are "the type of information that could give rise to a privacy injury." 2022 WL 4624898, at *7 (N.D. Cal. Sep. 30, 2022). Likewise *Low v. LinkedIn Corp.* (*Low II*), 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012), held the same as to "browsing history" data, dismissing the intrusion upon seclusion claim there. *Heeger*, 509 F. Supp. 3d at 1189, held the same as to IP addresses. *See also In re Google Location Histor. Litig.*, 428 F. Supp. 3d 185, 199 (N.D. Cal. 2019) (same as to geolocation data).

For the foregoing reasons, Plaintiffs cannot establish a reasonable expectation of privacy in the information they allege OpenX collected. Accordingly, their intrusion upon seclusion claim should be dismissed.

**b.      OpenX's alleged conduct does not constitute an egregious or highly offensive breach of norms**

Plaintiffs' intrusion upon seclusion claim also fails because they have not alleged that OpenX's conduct—which is expressly permitted and regulated by state and federal laws (*see supra* II.A)—is highly offensive or egregious. Precedent is clear that there is no "highly offensive intrusion of privacy" for the types of data allegedly collected here. *See In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012); *Popa*, 153 F.4th at 791. The "disclosure" of "unique device identifier number[s]" "does not constitute an egregious breach of social norms." *See In re iPhone Application Litig.*, 844 F. Supp. 2d at 1063. Nor even does the disclosure of a person's "personal data," "geolocation information," name and identity, contact list, or contents of communications through social media to third party developers—information far more detailed than the information Plaintiffs allege here. *See id.* (as to "personal data" and "geolocation information"); *In re Google Priv. Pol'y Litig.*, 58 F. Supp. 3d 968, 974, 988 (N.D. Cal. 2014) (disclosure of a person's name and identity, contact list, and contents of communications through social media to third-party developers "do[es] not plausibly rise to the level of intrusion necessary to establish an intrusion claim."). Indeed, the bar to state such a claim is so high that "[e]ven disclosure of personal information, including social security numbers" (which Plaintiffs do not allege are at issue) "does not constitute an 'egregious breach of the social norms' to establish an invasion of privacy claim." *Low II*, 900 F. Supp. 2d at 1025 (citation omitted).

As demonstrated in the cases cited above, Plaintiffs' conclusory allegations that OpenX collects standard device, browser, and web traffic information (on behalf of its publisher partners) reflect no more than "routine commercial behavior" in the advertising industry and does not constitute a highly offensive or egregious intrusion of privacy. *See Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 991–92 (2011), *modified* June 7, 2011 (citing cases) (the sort of conduct generally arising to the level of invasion of privacy includes the "gratuitous disclosure of

a patient's HIV status" or the "improper use of confidential mental health records"). For this reason as well, Plaintiffs' intrusion upon seclusion claim fails.

**2.  Plaintiffs fail to state a claim for violation of CIPA § 631(a) or ECPA § 2511(1) (Counts II and V)**

Plaintiffs do not and cannot plausibly allege that OpenX's practices amount to wiretapping under CIPA § 631(a) or the federal Wiretap Act, as amended by the Electronic Communications Privacy Act ("ECPA") §§ 2510 et seq.[2] There are four bases for a violation of CIPA § 631(a): (i) intentionally wiretapping with any telegraph or telephone wire; (ii) willfully attempting to read or to learn the contents or meaning of a communication in transit over a wire; (iii) attempting to use or communicate information obtained from the two previous activities; and (iv) aiding and abetting another in the above conduct. Cal. Penal Code § 631(a). Plaintiffs do not allege that OpenX committed intentional wiretapping under subsection (i). (*See, e.g.*, FAC ¶¶ 234-260.) To prove a claim under any of the remaining theories of liability, plaintiffs must allege that defendant attempted to read or learn, or subsequently use, the "contents" of communications obtained "in transit." *See* Cal. Penal Code § 631(a).[3] Mirroring subsections (ii) and (iii) of CIPA, Plaintiffs also assert a violation of the ECPA for "intentional interception of the content of any electronic communication" and "intentional[] us[e] . . . of Plaintiffs' and Class Members electronic communications." (FAC ¶¶ 288, 300; 18 U.S.C. § 2511(1)(a)).

None of Plaintiffs' wiretapping theories are viable, and their CIPA Section 631(a) and ECPA claims fail for several independent reasons. First, Plaintiffs do not allege interception of contents as defined under the applicable provisions. Second, OpenX cannot be subject to liability under these statutes because it constitutes a party to the alleged communications. Third, Plaintiffs

---

[2] Courts routinely analyze violations of 18 U.S.C. § 2511(1)(a) and violations of CIPA § 631(a) together. *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051 (N.D. Cal. 2018) ("[A]nalysis for a violation of CIPA is the same as that under the federal Wiretap Act.") (citation omitted).

[3] To the extent Plaintiffs' vague allegation that OpenX "enables Partner Trackers to identify the user behind any specific communication" is intended to invoke a claim under subsection (iv) (aiding and abetting), that allegation is plainly insufficient. Plaintiffs do not actually allege any conduct covered by subsections (i), (ii), or (iii) that OpenX allegedly aided or abetted, and as discussed above, the allegation that OpenX could deanonymize any Plaintiffs' data is implausible. (*Supra* II.D.)

MEMORANDUM OF POINTS & AUTHORITIES IN
SUPPORT OF OPENX'S MOTION TO DISMISS                    15
3:25-CV-05588-SI

fail to allege that OpenX intercepted any communications while in transit, as required. Finally, the consent of the website publishers defeats Plaintiffs' ECPA claim.

### a.    Plaintiffs fail to plausibly allege that OpenX intercepted the "contents" of their alleged electronic communications

Plaintiffs' CIPA Section 631(a) and ECPA claims fail because Plaintiffs do not plausibly allege that OpenX intercepted the "contents" of their alleged electronic communications, i.e., "the intended message conveyed by the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014); *see also United States v. Reed*, 575 F.3d 900, 917 (9th Cir. 2009) (defining "contents" as the "substance, purport, or meaning" of a communication) (quoting 18 U.S.C. § 2510(8)).[4] Instead, Plaintiffs allege only that OpenX tracked information about their devices, browsers, visits to the Bon Appétit and Covered California websites (though not any specific URLs), and unspecified "future web browsing activity." (FAC ¶¶ 206, 220.) This is fatally inadequate. First, as for the device and browser information Plaintiffs allege was intercepted, precedent is clear that such "[r]ecord information regarding the characteristics of the message that is generated in the course of the communication" is not "content." *In re Zynga Priv. Litig.*, 750 F.3d at 1106; *see also Yale v. Clicktale, Inc.*, 2021 WL 1428400, at *1, *3 (N.D. Cal. Apr. 15, 2021) (the "date and time of the visit, the duration of the visit, Plaintiff's IP address, her location at the time of the visit, her browser type, and the operating system on her device" were mere record information (citation omitted)). The same is even true for information beyond that which Plaintiffs allege was collected here, such as "the name, address and subscriber number or identity of a subscriber or customer." *Graham I*, 533 F. Supp. 3d at 833 (citation omitted).

Second, Plaintiffs' allegations as to the websites they visited fare no better. Their barebones allegations that their visits to Bon Appétit and Covered California were tracked are insufficient to allege "content" under CIPA. *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021) ("pages viewed" and "URLs" are not "content" for purposes of wiretapping liability because they do not "constitute[] message content in the same way that the

---

[4] As with the "in transit" element, "content" has the same meaning under CIPA § 631(a) and the ECPA. *Graham v. Noom, Inc.* (*Graham I*), 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021).

words of a text message or an email do.") (citing *In re Nickelodeon Consumer Priv. Litig.*, 2014 WL 3012873, at *15 (D.N.J. July 2, 2014). Plaintiffs do not identify *any* specific URLs they visited that OpenX purportedly tracked. And even if they did, such allegations can only even potentially qualify as "contents" if they involve "descriptive URLs that reveal specific information about a user's queries" and that plaintiff herself "conducted the searches or visited the webpages." *King v. Hard Rock Cafe Int'l (USA), Inc.*, 2025 WL 1635419, at *4 (E.D. Cal. June 9, 2025) (citation omitted). Plaintiffs make no such allegations here. Accordingly, their CIPA Section 631(a) and ECPA claims should be dismissed.

> **b.    Because OpenX is a party to the alleged communications, it is exempt under both CIPA and ECPA**

OpenX and its publisher partners, such as Bon Appétit, are parties to Plaintiffs' alleged communications, rather than third-party eavesdroppers; accordingly, OpenX is exempt from liability under both CIPA and ECPA. *See* 18 U.S.C. § 2511(2)(d) ("It shall not be unlawful under this chapter" to intercept an electronic communication "where such person is a party to the communication."); *see also Graham I*, 533 F. Supp. 3d at 828, 831–33 (dismissing CIPA claim under the "party to the communication" exception). Plaintiffs allege they visited two websites— Bon Appétit and Covered CA—deploying OpenX's pixel. (FAC ¶¶ 166-168, 177.) As acknowledged by the FAC, online publishers, such as Bon Appétit, choose to enable OpenX's technology in order to sell advertising impressions on their sites. (*Id.* ¶¶ 44, 167, 177, 200, 211.) Plaintiffs voluntarily visited these websites and knowingly transmitted data to the website operators, making the operators parties to these alleged communications. So too is OpenX. Acting at the direction of the publishers, OpenX is "an extension" of the website operators rather than an outsider "who presses up against a door to listen to a conversation." *Graham I*, 533 F. Supp. 3d at 832; *Graham v. Noom, Inc.* (*Graham II*), 2021 WL 3602215, at * 1 (N.D. Cal. Aug. 13, 2021) (defendant is "not a third-party wiretapper because it is not an outsider, and instead is a software vendor that provides a service that allows [the website operator] to analyze its own data."); *see also Yale*, 2021 WL 1428400, at *3 (same). Indeed, Plaintiffs do not allege that OpenX used any data for any reason other than to facilitate sales of advertising impressions on behalf of its

publisher partners. (*See, e.g.*, FAC ¶¶ 47-163.) For this reason as well, Plaintiffs' CIPA Section 631(a) and ECPA claims fail.

c.    **Plaintiffs' conclusory allegations do not adequately allege any interception "in transit"**

To plead a claim under CIPA § 631(a) and the ECPA, Plaintiffs must also plead facts showing that OpenX "intercepted" a communication while it was "in transit." *See* Cal. Penal Code § 631(a) ("reads . . . communication while . . . in transit"); 18 U.S.C. §§ 2511(1)(a), (c), (d) ("intercept[ion]" of a communication). "Intercept[ion]" must occur while the communication is being actively transmitted. Once the communication reaches its recipient it is no longer in transit, and a party cannot be liable under either statute. *See* Cal. Penal Code § 631(a); *Adler v. Community.com, Inc.*, 2021 WL 4805435, at *3 (C.D. Cal. Aug. 2, 2021) (communication must be "acquired during transmission") (citation omitted). Courts employ the same standard under both CIPA § 631(a) and the ECPA. *See id.*

Plaintiffs' conclusory assertions of "real time" and "immediate[]" interception (*see* FAC ¶¶ 169, 218) are insufficient where Plaintiffs fail to allege any facts indicating that OpenX intercepted any purported communications in transit. As *Rodriguez v. Google LLC* held, "[u]sing the word 'intercept' repeatedly" is insufficient absent additional specific facts to "make it plausible Google is intercepting their data in transit." 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022); *see also Rosenow v. Facebook, Inc.*, 2020 WL 1984062, at *7 (S.D. Cal. Apr. 27, 2020) (pleading that "Yahoo knowingly used an algorithm to intercept and scan Plaintiff's incoming chat messages for content during transit and before placing them in electronic storage" was conclusory and inadequate) (citation omitted).

Nor could Plaintiffs plead facts sufficient to allege that OpenX intercepted communications while in transit. Per Plaintiffs' own allegations, any collection of Plaintiffs' interactions with websites occurs *after* any communications arrived at their intended destination. According to Plaintiffs, users "communicate" with the host websites by requesting certain URLs from the websites. (*See* FAC ¶ 90 (alleging the "communications" at issue are users' "full-string URLs and button click events.").) When users enter that URL, the browser sends a GET request

to the website, which then responds by sending the website's content back to the user's browser. *See In re Zynga Priv. Litig.*, 750 F.3d at 1101–02. Plaintiffs further allege that it is only once Plaintiffs "reach*ed*" the websites that OpenX allegedly collected their information. (FAC ¶ 212 ("as soon as [Plaintiff Calcines] reached the Bon Appétit website, the OpenX Tracker collected his IP address").) And Plaintiffs do not allege that OpenX captures a user's individual keystrokes or any other "real-time" information as they are entered into a browser. Any alleged interception thus occurred after the alleged communication was complete.

OpenX's purported conduct here is thus analogous to collecting information about emails after they are received, which courts have held is not an interception "in transit" under the ECPA. *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 952 (N.D. Cal. 2014) ("reading emails that have already been received in an email account's inbox does not constitute interception" (cleaned up)). As courts have explained, "[t]here is only a narrow window during which an … interception may occur—the seconds or mili-seconds before which a newly composed message is saved to any temporary location following a send command." *Id.* at 951–52 (citation omitted). Plaintiffs have failed to plausibly allege any interception during this "narrow window," and their CIPA Section 631(a) and ECPA claims fail for this reason as well.

> **d.** **Plaintiffs' ECPA claim also fails because Bon Appétit consented to any alleged interception, as would Covered California if it had used OpenX's pixel**

Plaintiffs' ECPA claim also fails on the independent basis that no ECPA claim lies where "one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act . . . ." 18 U.S.C. § 2511(2)(d); *see Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1055 (N.D. Cal. 2025), *appeal docketed*, No. 25-2857 (9th Cir. May 2, 2025); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1026 ("[T]he consent of one party is a complete defense to a Wiretap Act claim.") As Plaintiffs acknowledge, Bon Appétit installed OpenX's pixel on its website. If Covered California had used the OpenX pixel (which it did not), it too would have been responsible for installing that pixel on its website. (*See* FAC ¶¶ 44 (alleging OpenX uses pixels "in conjunction with website

operators"), 126 (alleging that OpenX's API "enable[s] companies to open up their applications' [or websites'] data and functionality" (despite not bringing any claims related to any APIs)).) Thus, these entities necessarily consented to their participation in Plaintiffs' alleged electronic communications. Accordingly, there is no liability under the ECPA. *See Doe I v. Google LLC*, 741 F. Supp. 3d 828, 842 (N.D. Cal. 2024) (dismissing ECPA claim given that "alleged interception of private health information only occurs because the health care providers choose to install Google source code on their web properties.").

The ECPA provides a limited exception to one-party consent when the "communication is intercepted for the purpose of committing any criminal or tortious act. . . ." 18 U.S.C. § 2511(2)(d). Plaintiffs attempt to invoke this exception by alleging that OpenX "violate[d] state law, including the [CIPA]." (FAC ¶ 302.) This is insufficient. *See Lakes*, 777 F. Supp. 3d at 1057 ("[T]he focus [of the exception] is not upon whether the interception itself violated another law; it is upon whether the purpose for the interception—its intended use—was criminal or tortious." (citation omitted and first alteration in original)); *Sussman v. Am. Broad. Co.*, 186 F.3d 1200, 1202 (9th Cir. 1999); *see also Saedi v. SPD Swiss Precision Diagnostics GmbH*, 2025 WL 1141168, at *13 (C.D. Cal. Feb. 27, 2025) (plaintiffs cannot "bootstrap an alleged CIPA violation to invoke the Crime-Tort Exception in ECPA" as the alleged criminal or tortious purpose must be "independent of the interception itself"). Plaintiffs must allege that the "primary motivation or a determining factor in the [defendant's] actions has been to injure plaintiffs tortiously." *Lakes*, 777 F. Supp. 3d at 1057 (citation omitted). While wiretapping for blackmail purposes qualifies for the exception (not alleged here), the act of wiretapping alone, though it may violate other state laws, does not. *See Sussman*, 186 F.3d at 1202–03.

Plaintiffs do not allege any criminal or tortious motive. Rather, they allege that OpenX, publishers, and advertisers collect device data to "enrich" themselves. (*See, e.g.*, FAC ¶¶ 43, 88, 173, 184.) But courts repeatedly hold that this routine commercial behavior is insufficient to invoke the crime-tort exception. *See, e.g.*, *Lakes*, 777 F. Supp. 3d at 1057–58 (declining to apply crime-tort exception to alleged motive "to improve the effectiveness of its and Meta's advertising

MEMORANDUM OF POINTS & AUTHORITIES IN
SUPPORT OF OPENX'S MOTION TO DISMISS          20
3:25-CV-05588-SI

and marketing and to monetize the information via targeted advertising, and other means" (cleaned up)); *Roe v. Amgen Inc.*, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024) (same where alleged motive was "to improve [] marketing and advertising efforts" "rather than to injure plaintiffs tortiously or criminally."). Here, too, Plaintiffs have failed to plead facts that could satisfy the crime-tort exception.

### 3. Plaintiffs fail to state a claim for violation of CIPA § 638.51(a) (Count III)

Plaintiffs' CIPA Section 638.51(a) claim fails because Plaintiffs fail to plausibly allege that the OpenX pixel is a pen register under the meaning of the statute. Section 638.51(a) of CIPA bars any person from installing or using "a pen register or a trap and trace device without first obtaining a court order." Plaintiffs allege that the OpenX pixel is a pen register (FAC ¶¶ 270-271), which is defined as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." CIPA § 638.50(b). This allegation is implausible, and thus insufficient to state a claim, for several reasons.

First, as *Aviles v. Liveramp, Inc.* explains, courts have historically recognized that "[a] pen register . . . records the numbers dialed from a telephone." 2025 WL 487196, at *2 (Cal. Super. Jan. 28, 2025) (citation omitted), *tentatively adopted*, 2025 WL 487199. *Aviles* further explains that in the context of electronic communications, "[t]he analog of the number dialed by a telephone here is the IP address and related information of a **website** accessed by a computer—**but not the computer's own IP address** or identifying information." *Id.* (emphases added). *Aviles* also confirms that "the category of information collected by pen registers as defined by the statute has [not] been expanded." *Id.* Plaintiffs allegation that the OpenX pixel "enabled Defendant to collect Plaintiffs' and California Subclass Members' IP addresses. . . ." (FAC ¶ 271) merely alleges that OpenX collected the computer's own IP address. As *Aviles* explained, the "problem with this argument is that it is normal for websites to track the IP addresses of their visitors." *Aviles*, 2025 WL 487196, at *3. "Without alleging that Defendant installed software on *Plaintiff's* device or browser that collected incoming contact information to *Plaintiff's* device,

Plaintiff has not alleged anything above and beyond how the internet normally works." *Id*. (dismissing Section 638.51 claim).

The statute's legislative history underscores that this provision does not apply to web pixels. As noted, Section 638.51 prohibits the use of any pen register or trap and trace device "without first obtaining a court order pursuant to Section 638.52. . . ." Cal. Penal Code § 638.51(a). Plaintiffs' illogical interpretation of the statute would require every advertising pixel on the internet to be approved by a court order. But such an order is intended to ensure judicial oversight of law enforcement surveillance, and must "specify" "the person . . . in whose name is listed *the telephone line*" and "[t]he number and, if known, physical location of *the telephone line* to which the pen register or trap and trace device is to be attached. . . ." *Id.* § 638.52(d)(1), (3) (emphases added). The legislative history further makes clear that this provision applies only to telephonic devices.[5] *See People v. Mitchell*, 46 Cal. App. 5th 919, 928 (2020) (statutes are construed "in a way that most closely comports with the apparent intent of the Legislature." (citation omitted)); *id.* at 929 (California courts "avoid interpreting statutes in a manner that may produce illogical results.").

In line with this reasoning, numerous California courts hold that website pixels do not constitute "pen registers" under CIPA. *See, e.g.*, *Licea v. Hickory Farms LLC*, 2024 WL 1698147, at *4 (L.A. Super. Ct. Mar. 13, 2024) (finding "public policy strongly disputes Plaintiff's potential interpretation of privacy laws as one rendering every single entity voluntarily visited by a potential plaintiff, thereby providing [the user's] IP address for purposes of connecting the website, as a violator"); *Sanchez v. Cars.com*, 2025 WL 487194, at *3 (L.A. Super. Ct. Jan. 27, 2025) (routine web tracker that collected device information not "pen register" under CIPA); *Aviles*, 2025 WL 487196, at *1–3 (tracking beacon that collects IP addresses and

_____

[5] *See, e.g.*, Assemb. Comm. on Privacy & Consumer Protection, Analysis of Assemb. B. 929, 2015-2016 Leg., Reg. Sess. at 4 (Cal. 2015) ("This bill is intended to authorize . . . emergency orders for pen registers/trap and trace devices used in *telephonic surveillance* . . . ."); *id.* at 5 ("pen registers/trap and trace devices are used by law enforcement *for telephone surveillance*"); S. Comm. on Pub. Safety, Analysis of Assemb. B. 929, 2015-2016 Leg., Reg. Sess. at 10 (Cal. 2015) (describing "a 'pen register' which allows law enforcement officers to record all outgoing numbers from a particular *telephone line*" and a 'trap and trace device' which allows them to record what numbers have called a specific *telephone line*").

MEMORANDUM OF POINTS & AUTHORITIES IN
SUPPORT OF OPENX'S MOTION TO DISMISS                    22
3:25-CV-05588-SI

device information not a "pen register" or "trap and trace device" under CIPA).

Reading CIPA's definition of pen registers to encompass web pixels would also create conflict between the California Penal Code and the California Consumer Privacy Act (CCPA). The CCPA, which Plaintiffs do not allege OpenX violated, is a comprehensive privacy statute that details the requirements for the collection, retention, and sale of personal information, including in third-party advertising. *See* Cal. Civ. Code §§ 1798.100 et seq. Far from criminalizing web pixels and data brokers, the CCPA specifically contemplates this activity. Cal. Civ. Code §§ 1798.99.82, 1798.99.87; *see also* FAC ¶ 12. To adopt Plaintiffs' proposed reading of the pen-register provisions of CIPA would thus criminalize activity specifically authorized by the CCPA, and effectively render all online advertising illegal without a court order.[6] But courts "harmonize statutes," and do not read them to create conflicts. *See In re Jenson*, 24 Cal. App. 5th 266, 275 (2018) (citation omitted). This too confirms that Plaintiffs' Section 638.51 claim cannot stand.

### 4.    Plaintiffs fail to state a claim for Unjust Enrichment (Count IV)

Plaintiffs do not and cannot plead that they lack an adequate remedy at law; accordingly, *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) holds that they are not entitled to equitable relief. In *Sonner*, the Ninth Circuit held that a plaintiff cannot pursue equitable relief unless they establish that they lack an adequate remedy at law. Plaintiffs fail to allege anywhere in their FAC that the available remedies at law are inadequate. Nor could they, as such a claim would be contradicted by the fact that Plaintiffs seek monetary damages for their claims. *See In re MacBook Keyboard Litig.*, 2020 WL 6047253, at *3–4 (N.D. Cal. Oct. 13, 2020) (where plaintiffs sought monetary damages, the "availability of an adequate legal remedy [was] clear from the face of the SAC" regardless of allegation "that no adequate legal remedy exists").

---

[6] California law adopts an opt-out—not an opt-in, or consent-only—framework, where consumers must affirmatively opt out from data collection and disclosure, Cal. Civ. Code §§ 1798.120, 1798.135, which would conflict with the consent requirement under CIPA.

Because Plaintiffs' unjust enrichment claim sounds in equity and exclusively provides for equitable relief, that claim must be dismissed. *See Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 907–08 (N.D. Cal. 2021) (dismissing unjust enrichment claim where Plaintiffs did not make a showing that a remedy at law was inadequate or unavailable). Likewise, Plaintiffs' intrusion upon seclusion claim should be dismissed to the extent Plaintiffs seek injunctive relief under that claim (*see* FAC ¶ 245 (seeking "all relief available" for intrusion upon seclusion)). *See In re MacBook Keyboard Litig.*, 2020 WL 6047253, at *3–4 (*Sonner* extends to preclude equitable relief where monetary damages would compensate plaintiff, and dismissing UCL claim in its entirety and remaining claims "to the extent they seek an injunction, restitution, or other equitable relief.")

## V.    CONCLUSION

Because Plaintiffs lack Article III standing and fail to state any claim for relief, OpenX respectfully asks the Court to dismiss Plaintiffs' FAC in its entirety.

Dated: November 21, 2025                                  MORRISON & FOERSTER LLP


By: */s/ Tiffany Cheung*
    Tiffany Cheung
    Camila A. Tapernoux

    *Attorneys for Defendant*
    OPENX TECHNOLOGIES, INC.