TIFFANY CHEUNG (CA SBN 211497)
TCheung@mofo.com
CAMILA A. TAPERNOUX (CA SBN 299289)
CTapernoux@mofo.com
MORRISON & FOERSTER LLP
425 Market Street,
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Defendant
OPENX TECHNOLOGIES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KILEY KRZYZEK AND CHRISTIAN CALCINES, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiffs,<br><br>v.<br><br>OPENX TECHNOLOGIES, INC.,<br><br>Defendant. | Case No. 3:25-cv-05588-SI<br><br>**DEFENDANT OPENX TECHNOLOGIES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Date: January 16, 2026<br>Time: 10:00 a.m.<br>Courtroom: 1 - 17th Floor<br>Judge: The Honorable Susan Illston<br><br>Action Filed: July 2, 2025 |

# TABLE OF CONTENTS

Page


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. Plaintiffs' Opposition Fails to Identify Any Allegations About Their Experiences Sufficient to Establish Article III Standing ..... 2

B. Plaintiffs' Opposition Does Not Save Their Failure to Establish a Reasonable Expectation of Privacy or Egregious Conduct Sufficient to State an Intrusion Upon Seclusion Claim (Count I) ..... 7

C. Plaintiffs Have Not Shown That They Alleged the Interception of Content in Transit as Required Under CIPA § 631(a) and ECPA § 2511(1) (Counts II and V) ..... 9

1. The Crime-Tort Exception Does Not Save Plaintiffs' ECPA Claim ..... 12

D. Plaintiffs Have Not Shown How the Technology at Issue Violates CIPA § 638.51(a) (Count III) ..... 13

E. Plaintiffs Fail to State a Claim for Unjust Enrichment (Count IV) ..... 15

III. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Apple Processor Litig.*,
No. 22-16164, 2023 WL 5950622 (9th Cir. Sept. 13, 2023) ................................................ 15

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................................ 4

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ................................................................................ 9, 12

*Deivaprakash v. Conde Nast Digital*,
No. 25-cv-04021-RFL, 2025 WL 2779193 (N.D. Cal. Sept. 4, 2025) ...................................... 4

*Echeverria-Corzan v. Fox Corp.*,
No. 25-cv-04253-AMO, 2025 WL 3128194 (N.D. Cal. Nov. 7, 2025)................................. 14

*In re Facebook Internet Tracking Litigation*,
956 F.3d 589 (9th Cir. 2020)............................................................................................... 8, 9

*Fregosa v. Mashable, Inc.*,
No. 25-CV-01094-CRB, 2025 WL 2886399 (N.D. Cal. Oct. 9, 2025) ................................. 14

*Gabrielli v. Motorola Mobility LLC*,
No. 24-CV-09533-JST, 2025 WL 1939957 (N.D. Cal. July 14, 2025) ..................................... 5

*Gilligan v. Experian Data Corp.*,
No. 3:25-cv-02873 (N.D. Cal. Jan. 6, 2026), ECF No. 51 ...................................... 5, 6, 10, 15

*Gutierrez v. Converse Inc.*,
No. 24-4797, 2025 WL 1895315 (9th Cir. July 9, 2025)....................................................... 14

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ................................................................................. 5, 7

*Katz-Lacabe v. Oracle Am., Inc.*,
No. 3:22-cv-04792-RS (N.D. Cal. Nov. 17, 2023), ECF No. 87 .............................................. 5

*Lesnik v. Eisenmann SE*,
374 F. Supp. 3d 923 (N.D. Cal. 2019) .................................................................................... 15

*Lewis v. Magnite, Inc.*,
No. 2:25-cv-3448 (C.D. Cal. Dec. 4, 2025), ECF No. 55 ..................................... 5, 10, 11, 12

*Marden v. LMND Med. Grp., Inc.*,
No. 23-cv-03288-RFL, 2024 WL 4448684 (N.D. Cal. July 3, 2024).................................... 12

*McClung v. AddShopper, Inc.*,
No. 23-CV-01996-VC, 2024 WL 189006 (N.D. Cal. Jan. 17, 2024) ........................................ 4

*McClung v. AddShopper, Inc.*,
No. 23-CV-01996-VC (N.D. Cal. May 29, 2025), ECF No. 213 ............................................ 5

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025)........................................................................................ 2, 3, 6

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876, 902 (C.D. Cal. 2024)................................................................. 10

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) ...................................................... 5, 7, 9, 14

*Selby v. Sovrn Holdings, Inc.*,
No. 25-cv-03139-RFL, 2025 WL 2950164 (N.D. Cal. Oct. 16, 2025)............................... 7, 15

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020)...................................................................................... 14, 15

*WildEarth Guardians v. Jackson*,
870 F. Supp. 2d 847 (N.D. Cal. 2012), *aff'd sub nom*. *WildEarth Guardians v. McCarthy*, 772 F.3d 1179 (9th Cir. 2014) ............................................................... 13

*Xu v. Reuters News & Media, Inc.*,
No. 25 CV459918, 2025 WL 3035016 (Santa Clara Super. Ct. Oct. 24, 2025)....................... 9

## I. INTRODUCTION

Despite already taking the opportunity to amend their complaint, Plaintiffs' pleading defects remain in their FAC. As a threshold matter, Plaintiffs have failed to establish standing. As set forth in OpenX's Motion to Dismiss, Plaintiffs' FAC alleges nothing more than that OpenX collected Plaintiffs' anonymized IP addresses, devices, browser information, and unspecified web-browsing activity— data that, at most, is pseudonymous and cannot be linked back to any identified individual. Plaintiffs cannot show ***any*** injury based on the collection of this limited, anonymous information, and—dispositively—their Opposition does not argue that they can. Instead, Plaintiffs' Opposition relies exclusively on generic allegations in the FAC about the online advertising industry in general, not about what either named Plaintiff alleges they experienced. Such allegations cannot confer standing on Plaintiffs, and all their claims must be dismissed for lack of standing.

Moreover, Plaintiffs fail to state a claim under Rule 12(b)(6) for any of their causes of action. First, the Opposition does not save their **intrusion upon seclusion** claim because it (1) relies only on generic allegations irrelevant to Plaintiffs' purported experiences and (2) does not show how either Plaintiff had a reasonable expectation of privacy in the limited, anonymous information they allege was collected from them and that the alleged collection was highly offensive. Second, Plaintiffs' Opposition does not rescue their **CIPA § 631(a) or ECPA** claims for the same reason—it does not (and cannot) show that Plaintiffs have alleged the interception of the "contents" of any of their communications obtained "in transit." Third, Plaintiffs failure to dispel OpenX's authority holding that the technology at issue is not a pen register under CIPA confirms that their **CIPA § 638.51(a)** claim must be dismissed. Fourth, Plaintiffs do not (and cannot) argue that they have adequately alleged they lack an adequate remedy at law, so their **unjust enrichment** claim should be dismissed as well.

Plaintiffs' failure to cure these defects—after the benefit of amendment following OpenX's first motion to dismiss—confirms that any further amendment would be futile. Accordingly, the FAC should be dismissed with prejudice.

## II. ARGUMENT

### A. Plaintiffs' Opposition Fails to Identify Any Allegations About Their Experiences Sufficient to Establish Article III Standing

Plaintiffs do not dispute that, to establish standing under Ninth Circuit authority, they must allege that OpenX collected information about them that would be "highly offensive" or that "implicates a protectable privacy interest." *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025); (Mot. at 9-11; Opp. at 2-5). Instead, Plaintiffs' only effort to avoid dismissal for lack of standing is to point to generalized allegations in the FAC that, fatally, have no relation to what Plaintiffs allege they themselves experienced. Because Plaintiffs do not and cannot identify any allegations in the FAC about their own experiences to support their assertion of standing, their claims must be dismissed.

As set forth in OpenX's opening brief, Plaintiff Calcines alleges only that when he visited bonappetit.com, the OpenX pixel collected his IP address (IP addresses are not personally identifying and are inherently visible to website owners, network owners, and internet service providers in normal internet operation), device and browser information (likewise, non-identifying generic data about whether a website is being visited by, *e.g.*, a laptop or a tablet, using Chrome or Safari), unspecified article selections, and unspecified "future web browsing activity." (FAC ¶¶ 212, 215, 217, 220.) Similarly, Plaintiff Krzyzek alleges only that when she visited coveredca.com, the OpenX pixel collected her device and browser information, her visit to Covered California, and unspecified "future web browsing activity." (FAC ¶¶ 203, 206.) Just as in *Popa*, this information—which is anonymized and non-sensitive—does not encompass anything "embarrassing, invasive, or otherwise private[.]" 153 F.4th at 791.

As to Plaintiff Krzyzek's Covered California allegations in particular, it bears emphasis that Plaintiffs' FAC relies on a single, unverified third-party media report to allege that an OpenX pixel was present on the Covered CA website. As OpenX explained in its opening brief, that report expressly cautions that its results "should not be taken as the final word" and require "further investigation before a definitive claim can be made." (Mot. at 6.) Plaintiffs' Opposition does not engage with this issue at all. It does not cite the Markup report, does not defend its

methodology, and does not identify any independent reliable basis for alleging that Covered California used OpenX's technology—underscoring that Plaintiffs' claims rest on speculation rather than well-pleaded facts.

Plaintiffs' only response is to attempt to obfuscate their threadbare, plainly insufficient allegations. As OpenX argued in its opening brief, *Popa* involved the alleged collection of more extensive data than what Plaintiffs allege here. (Mot. at 9.) Plaintiffs claim that argument "mischaracterizes" the data at issue in *Popa* as compared to the data at issue here. (Opp. at 3-4.) But Plaintiffs' only support for this assertion is to claim—incorrectly—that their FAC alleges that OpenX tracks Plaintiffs' "sensitive data" (Opp. at 2 (citing FAC ¶¶ 43-44, 48-64, 92-93, 163, 186, 198)) and "identifies Plaintiffs and Class Members" based on that information. (Opp. at 2 (citing FAC ¶¶ 42-43, 58, 74, 92, 187).) Again, however, these paragraphs of the FAC have absolutely nothing to do with Plaintiffs' own experiences, which are addressed in FAC ¶¶ 199-224. As detailed above, the named Plaintiffs allege only that OpenX collected their non-sensitive IP address (as to Plaintiff Calcines), device and browser information, visits to the bonappetit.com and coveredca.com homepages (respectively), and unspecified future web browsing activity. Plaintiffs thus wholly fail to show how *Popa* would not control here.

Rather than cite to any allegations about either named Plaintiff, the paragraphs Plaintiffs seek to rely on in their Opposition consist of, for example:

- Generic allegations that OpenX's cookies are synced with other third parties (FAC ¶¶ 42-43)—but nowhere in the FAC does either named Plaintiff allege they were subject to cookie syncing. In any event, as detailed below, even if Plaintiffs did so allege, these allegations would remain inadequate because Plaintiffs do not plausibly allege how their data could have been de-anonymized via cookie syncing.
- Generic allegations about an identity graph of audience segments (FAC ¶ 58)—but nowhere in the FAC does either named Plaintiff allege they were included in any identity graph.
- Implausible allegations that OpenX collects age, gender, and ethnicity data (FAC ¶¶ 72,

92, 187) when Plaintiffs nowhere in the FAC allege that OpenX collected any potentially identifying data from either Plaintiff (much less used such data to "de-anonymize" them).

Instead, both Plaintiffs implausibly allege in wholly conclusory terms that OpenX "deanonymized" them using nothing more than their IP address, device, and browser information. (FAC ¶¶ 204-05, 219.) But the alleged collection of such anonymized information (e.g., IP address 192.168.1.1 associated with a laptop using the Chrome web browser) does not in any way identify any individual. And Plaintiffs provide ***no*** explanation of how such "deanonymization" could have occurred based on the alleged collection of IP address, device, and browser information. Plaintiffs' opposition does not address this shortcoming at all, much less attempt to explain how their allegations could meet *Bell Atlantic Corp. v. Twombly*'s plausibility standard. 550 U.S. 544, 570 (2007); (Mot. at 8). Accordingly, they have failed to establish any injury that could confer standing.

Plaintiffs' cases in support of their standing argument confirm that their sparse allegations are inadequate. First, *Deivaprakash v. Conde Nast Digital* found standing where "the [alleged] privacy violation extends beyond the collection of just [the plaintiff's] IP address and metadata" to include "geographic locations, incomes and preferences, among other characteristics" and where the named plaintiff alleged that the defendant built a profile on him that "interfere[d] with his ability to remain anonymous." No. 25-cv-04021-RFL, 2025 WL 2779193, at *1106-1107 (N.D. Cal. Sept. 4, 2025). Here, as noted, Plaintiffs do not allege that OpenX ever collected their specific geographic locations, incomes, preferences or any other characteristics that could be used to specifically identify them—only their IP address (as to Plaintiff Calcines), device and browser information, visits to the homepages of bonappetit.com and covereca.com (respectively), and unspecified future web browsing activity. *Deivaprakash* does not support a finding of standing based on such allegations.

*McClung v. AddShopper, Inc.*, No. 23-CV-01996-VC, 2024 WL 189006 (N.D. Cal. Jan. 17, 2024) is similarly inapposite. It involved allegations that the defendant bought "aggregated email records from data brokers" and then used those records to enable retailers to identify

visitors of their websites (including plaintiffs) who were otherwise anonymous. *See* Order Dismissing Case in Part & Otherwise Denying Mot. for Class Certification at 3, *McClung*, No. 23-CV-01996-VC (N.D. Cal. May 29, 2025), ECF No. 213. Plaintiffs' remaining cases likewise involved the collection of specific identifying information from named plaintiffs not alleged by Plaintiffs here. *See Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1082 (N.D. Cal. 2025) (allegations that defendant collected, for example, plaintiffs' "name, postal address history, and phone numbers," as well as "information on specific [medical] conditions and medications" and "full string URLs"); *Gabrielli v. Motorola Mobility LLC*, No. 24-CV-09533-JST, 2025 WL 1939957, at *6, *10 (N.D. Cal. July 14, 2025) (allegations that defendant "ignored Gabrielli's rejection of cookies" and nonetheless collected plaintiff's "demographic information, interests, and preferences… and geolocation data"); Civil Minutes at 13, *Lewis v. Magnite, Inc.*, No. 2:25-cv-3448 (C.D. Cal. Dec. 4, 2025), ECF No. 55 ("*Lewis* Minutes") ("the CAC does more than 'point[] to the general collection of IP addresses or location information derived therefrom'….but also [alleges that Defendant] monitored and intercepted communications related to [Plaintiffs'] personal characteristics, modes of living, purchase decisions, app selections, spending habits, and click choices.") (internal citation omitted); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928 (N.D. Cal. 2023) (allegations that defendant "obtain[ed], compile[d] and analyze[d] hundreds of physical locations Mr. Katz-Lacabe had traveled to… including the specific type of bank and branch," "hundreds of Mr. Katz-Lacabe['s] credit card purchases [including] specific purchase amounts and even SKUs for specific products," and associated Mr. Katz-Lacabe's information with his "name, email addresses, physical address, and phone numbers." (*See* Second Am. Class Action Compl. at 3-5, *Katz-Lacabe*, No. 3:22-cv-04792-RS (N.D. Cal. Nov. 17, 2023), ECF 87.)) The recent decision in *Gilligan v. Experian Data Corp.* also does not aid Plaintiffs. Order Denying Mot. to Stay & Granting in Part & Denying in Part Mot. to Dismiss, *Gilligan*, No. 3:25-cv-02873 (N.D. Cal. Jan. 6, 2026), ECF No. 51 ("*Gilligan* Order"). There, the plaintiffs alleged that the defendant tracked their online web browsing activity, including "full-string URLs and button click events," and tied that information to their "email address and other personal

identifiers" (*id.* at 3)—all in stark contrast to Plaintiffs' sparse allegations here.

Plaintiffs do not and cannot avoid the binding authority of *Popa*, where the Ninth Circuit found there was no standing based on allegations that Microsoft collected "URLs of web pages visited" along with device, browser, operating system, country of access, mouse movements, screen swipes, and inputted text—allegations that go beyond what Plaintiffs allege here. Their only attempt to avoid *Popa* is to dispute OpenX's argument that the Plaintiffs here allege only the collection of "information about their devices, browsers, and unspecific 'web browsing activity[.]'" (Opp. at 3-4.) But as addressed in detail above, while Plaintiffs baselessly say that OpenX's argument is "incorrect" (*id.*), Plaintiffs do not identify ***any*** paragraphs of the FAC beyond paragraphs 199-224 that allege what information was purportedly collected from ***them*** (and there are none). Based on a plain reading of the FAC's allegations directed to the Plaintiffs (FAC ¶¶ 199-224), the anonymized data allegedly collected by OpenX is far less sensitive than the data the Ninth Circuit found to be insufficient to allege any concrete injury sufficient to establish Article III standing. *Popa*, 153 F.4th at 786 (alleging collection of, *inter alia*, "mouse movements, clicks, keystrokes ..., URLs of web pages visited," and "text inputted by the user on the website.").

Finally, Plaintiffs' baseless argument that OpenX "connects users to non-anonymous profiles" still fails to show that OpenX ever even conceivably could have connected either named Plaintiff to a non-anonymous profile. The FAC paragraphs Plaintiffs cite here (Opp. at 5-6 (citing FAC ¶¶ 56-58, 60-62)) allege that OpenX collects hashed emails, hashed phone numbers, and Connected TV users, and uses that information as inputs to an identity graph. But the FAC does not allege that OpenX collected any such information from Plaintiffs that could even be entered into any identity graph. Accordingly, this argument cannot save their claims. In sum, the FAC's allegations about the identity graph are wholly inapplicable to the Plaintiffs.

Moreover, Plaintiffs' allegations in FAC ¶¶ 56-58, 60-62 would not show harm even if they did apply to Plaintiffs Calcines and Krzyzek (which they do not). While Plaintiffs attempt to allege that OpenX uses its identity graph to connect individuals to non-anonymous profiles, as

FAC ¶ 58 reflects, OpenX's identity graph is ***not used to identify any individuals***. Rather, it can be used to reach anonymous "audience segments" sorted by fields such as "habits, lifestyle, [and] spend." *Id*. Nothing in the FAC plausibly alleges that OpenX links this information to a real-world identity, contact information, or persistent personal profile. Thus, even the FAC's irrelevant allegations about the identity graph still fail to plausibly allege how the graph could be used to directly identify any individual, much less either named Plaintiff.[1] They accordingly do not allege any concrete injury that could support standing.

### B. Plaintiffs' Opposition Does Not Save Their Failure to Establish a Reasonable Expectation of Privacy or Egregious Conduct Sufficient to State an Intrusion Upon Seclusion Claim (Count I)

Plaintiffs do not dispute that in order to state a claim for intrusion upon seclusion, they must establish a reasonable expectation of privacy and a highly offensive or serious intrusion. (Mot. at 11.) Their efforts to argue that they have met these requirements again ignore the named Plaintiffs' actual allegations and rely on inapposite caselaw.

First, Plaintiffs argue they have met the "highly offensive" requirement for this claim by continuing to erroneously assert that they've alleged the collection of "highly sensitive browsing activity—tied to their email address and other personal identifiers[.]" (Opp. at 6.) But once again, Plaintiffs do not and cannot identify any allegation by Plaintiff Calcines or Plaintiff Krzyzek that any of their "highly sensitive browsing activity" was collected, because Plaintiffs only allege that their visits to a handful of website homepages were collected. *Supra* at II.A. And, Plaintiffs continue to rely on *Selby*, *Riganian*, *Katz-Lacabe*, and *Lewis*, which all involved allegations that the defendants collected detailed, personal, sensitive information and are thus inapposite (as discussed in detail above).

Likewise, Plaintiffs baselessly argue that they've shown a "reasonable expectation of privacy" in the information allegedly collected, as required for their intrusion upon seclusion

[1] Plaintiffs' cases are inapposite. *Selby v. Sovrn Holdings, Inc.* alleged that "the collected data allegedly includes 'full-string URLs' that reflect Plaintiffs' specific interactions with the websites at issue" and "search queries and specific items Plaintiffs viewed" (No. 25-cv-03139-RFL, 2025 WL 2950164, at *3 (N.D. Cal. Oct. 16, 2025))—Plaintiffs Calcines and Krzyzek bring no such allegations. And as discussed above, *Riganian* likewise involved allegations not present here, involving allegations that the defendants there collected detailed, personal information.

claim. (Opp. at 6-8.) Once again, however, they invoke only their generalized and unfounded allegations about OpenX (*see id*. at 7 (exclusively citing to allegations in the FAC that have no bearing on Plaintiffs' experiences)), not any allegations about either named Plaintiff's purported experience. Plaintiffs do not even attempt to argue that either named Plaintiff had a reasonable expectation of privacy in the extremely limited, anonymous, high-level data that they allege OpenX collected ***about them:*** IP addresses, browser information, visits to the homepages of Bon Appetit, Covered California, Fox, Apartment Therapy, and Business Insider, and unspecified "future web browsing activity." (FAC ¶ 206.) Accordingly, they have not shown how they could conceivably have a reasonable expectation of privacy in this information, and their intrusion upon seclusion claim should be dismissed.

Nor do Plaintiffs identify any cases supporting a reasonable expectation of privacy in the information allegedly collected about them. Their Opposition relies heavily and primarily on *In re Facebook Internet Tracking Litigation*, 956 F.3d 589, 603 (9th Cir. 2020), which is inapposite for several reasons. First, it involved the fundamentally distinct situation where Facebook allegedly tracked users' activities ***after*** they had logged out of Facebook, which Facebook allegedly had expressly and falsely stated that it would not do. *Id.* at 596, 602. Indeed, the Court found the reasonable expectation of privacy met because the plaintiffs "plausibly alleged that Facebook set an expectation that logged-out user data would not be collected, but then collected it anyway." *Id.* at 602. The *Facebook* court did ***not*** find that the plaintiffs inherently had a reasonable expectation of privacy in the type of data collected. *See id.* at 603 ("The question is not necessarily whether Plaintiffs maintained a reasonable expectation of privacy in the information in and of itself. Rather, we must examine whether the data itself is sensitive *and* whether the manner it was collected—after users had logged out—violates social norms.") There is no allegation in this case that OpenX ever collected information that it expressly told users it would not collect.

Second, plaintiffs in that case alleged that Facebook correlated the tracked activities with users' Facebook profiles and the detailed personal information contained therein, whereas Plaintiffs here do not plausibly allege that OpenX correlated any of the limited information

allegedly collected from Plaintiffs with any of their personal data. *See supra*, II.A. Third, the *In re Facebook* plaintiffs alleged that Facebook tracked "the identity of the individual internet user" and "the search terms that the user used to find" webpages (956 F.3d at 596), while Plaintiffs here do not allege that any search terms were tracked, nor do they plausibly allege that their identities were ever tracked or determined. (Mot. at 4, 10); *supra* at II.A.

Plaintiffs' reliance on *Deivaprakash*, *Riganian*, and *Lewis* is unavailing for the reasons discussed above. *Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023) is equally inapposite; Plaintiffs cite to the portion of this ruling denying defendants' summary judgment request on a CIPA claim. That claim was based on allegations that users reasonably understood Google's "Incognito" screen to mean that their communications would not be accessible to Google, when in fact they were. Unlike *Brown*, there are no allegations in the FAC that OpenX made any false representations that created specific expectations for users. *Brown* does not support any finding of a reasonable expectation of privacy in the disclosure of anonymized IP addresses and device and browser IDs allegedly connected with visits to the Bon Appetit and Covered California homepages. Finally, *Xu v. Reuters News & Media, Inc.*, No. 25 CV459918, 2025 WL 3035016 (Santa Clara Super. Ct. Oct. 24, 2025) considered whether the Plaintiff had established standing for his CIPA claim (the case did not involve any intrusion upon seclusion claim) in the Superior Court of California. That opinion expressly noted that "California courts are not bound by the requirements of Article III standing" (*id.* at *2)—unlike this Court.

### C. Plaintiffs Have Not Shown That They Alleged the Interception of Content in Transit as Required Under CIPA § 631(a) and ECPA § 2511(1) (Counts II and V)

All of Plaintiffs' allegations concern data transmitted by users to publishers' websites, using code deployed by those publishers, with OpenX operating as part of the publishers' infrastructure (*see, e.g.*, FAC at ¶¶ 51, 69–71, 78, 85)—not as a third party reading communications in transit. Plaintiffs do not dispute that to state a claim under CIPA § 631(a) or ECPA § 2511(1), they must allege that OpenX attempted to read or learn, or subsequently use, the "contents" of communications obtained "in transit." (Mot. at 15.) OpenX's motion demonstrated

that information about Plaintiffs' devices and browsers is not "content," and Plaintiffs' opposition does not refute or otherwise respond to this point. Plaintiffs only make the extremely vague argument that "at least on some websites," OpenX collects the specific web pages they visit; then, Plaintiffs leap to the conclusion that this would somehow disclose "personal interests, queries, and habits." (Opp. at 9.) But, fatally, Plaintiffs do not and cannot argue that the only website information they allege OpenX collected about Plaintiffs—their visits to the homepages of Bon Appetit, Covered California, Fox, Apartment Therapy, and Business Insider—constitutes content. This alone is sufficient grounds to dismiss their CIPA § 631(a) and ECPA § 2511(1) claims.

Instead, Plaintiffs point to three cases finding the "content" requirement met in circumstances not present here, where—even by Plaintiffs' own descriptions of these cases—the website information allegedly intercepted disclosed specific "search terms" or "search queries" the users employed. (Opp. at 9 (citing *Brown v. Google LLC*, *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024), and *Selby*).) *Gilligan*'s holding on Plaintiffs' CIPA and ECPA claims also does not apply; it turned on those plaintiffs' allegations that the defendant "intercepts 'full string URLs' that reflect not only the website visited, but also, for example, search queries or specific pages Plaintiffs viewed." *Gilligan* Order at 5. Again, Plaintiffs here do not identify any "full string URLs" that reflect each Plaintiff's "search queries" that were "intercepted."

*Lewis* is directly on point on this issue. There, the court held that plaintiffs failed to allege the interception of "content" where they "refer[red] only to an illustrative example related to drugs.com [] and that Plaintiffs 'used the search function of and/or interacted with a website or mobile app on which the Rubicon Tracker was installed[.]'" The court explained that "[w]ithout allegations as to what these Plaintiffs searched, Plaintiffs fail to plausibly allege that Defendant intercepted the contents of their communications." *Lewis* Minutes at 19. Those allegations are just as absent here, and the same result is warranted. Indeed, this case presents stronger grounds for dismissal because Plaintiffs here do not even allege that they used any search function on any of the websites they claim OpenX tracked; nor do Plaintiffs identify any specific search terms or queries they allege were tracked. Accordingly, their CIPA § 631(a) and ECPA § 2511(1) claims

must be dismissed on this basis alone.

Next, Plaintiffs' Opposition also ignores that Plaintiffs fail to allege that OpenX intercepted any of ***their*** purported communications while in transit. Plaintiffs allege only that OpenX associated their device IDs with visits to the homepages of Bon Appetit, Covered California, and a handful of other websites. Plaintiffs do not argue that OpenX somehow "intercepted" any "content" they transmitted to these homepages while such "content" was in transit. In fact, they seem to concede OpenX did not, as they describe these initial homepage visits as "the process by which Defendant's 'code gets to a website user's device' in the first instance." (Opp. at 9.) Thus, no content could have been "intercepted" before OpenX's code could "get to a website user's device."

Instead, Plaintiffs argue only that OpenX "intercepted" communications ***after*** a user arrived at the homepage of a website that used OpenX's pixels, resulting in the installation of an OpenX pixel on the user's browser. (Opp. at 9.) Plaintiffs argue that, at this point, "the OpenX Tracker then 'intercepts the detailed, full-string URL from each page of the Bon Appetit website a user visits." (*Id*. (internal quotations omitted).) But, as detailed above, neither Plaintiff alleges that they visited ***any*** specific full-string URL that actually contained any "content" on either the Bon Appetit or Covered California website. They allege only their initial respective visits to each website's homepage, which Plaintiffs concede would not meet the "in transit" requirement. Plaintiffs thus do not allege that OpenX "intercepted" any communications "in transit," as required to state a claim under CIPA § 631(a).

Plaintiffs' interception argument also fails because their allegations "suggest that [OpenX] would analyze Plaintiffs' communications after it collects them, not as it collects them." *Lewis* Minutes at 20. *Lewis* (decided after OpenX filed its opening motion) held that allegations that Magnite "integrate[s user data] with a number of third party data, attribution, and identity vendors" to "target[] the right user" (*see, e.g., Lewis* CAC (ECF No. 51), ¶¶ 97-98) indicated that any analysis occurred after collection, not during. *Id*. Plaintiffs assert nearly identical allegations here. (*See, e.g.* FAC ¶ 99 ("information is cross-referenced with other information collected by

OpenX…to add this web-activity information to a larger profile on the individual to sell their profile for targeted advertising.”).) Just as in *Lewis*, “[a]s such, the [FAC] falls short in alleging the ‘in-transit’ element.” *Lewis* Minutes at 20.

**1. The Crime-Tort Exception Does Not Save Plaintiffs’ ECPA Claim**

Plaintiffs do not dispute that Bon Appetit consented to any alleged interception, as would have Covered California if it had used OpenX’s pixel. Instead, they argue that this consent does not defeat their ECPA claim because the crime-tort exception applies. (Opp. at 13-14.) But, in arguing that this exception applies, Plaintiffs rely on the same misdirection they use throughout their opposition.

Plaintiffs argue that the exception applies where “plaintiffs ‘alleged that [technology companies] intercepted their communications for the purpose of associating their data with preexisting user profiles” in violation of state law and “benefited from this interception by using the information to sell ads[.]” (Opp. at 13.) As an initial matter, Plaintiffs do not apply the correct legal standard for application of the crime-tort exception. As set forth in OpenX’s motion, the crime-tort exception applies only where the “primary motivation or a determining factor in the [defendant’s] actions has been to injure plaintiffs tortiously;” seeking to enrich oneself, without a tortious motive, is insufficient. (Mot. at 20 (citing *Lakes*, 777 F. Supp 3d at 1057).) Dispositively, Plaintiffs do not dispute this standard or attempt to distinguish *Lakes*. Because they have not and cannot allege that OpenX’s primary motivation was to tortiously injure Plaintiffs, this exception does not apply.[2]

Even if Plaintiffs’ formulation accurately described the crime-tort exception (which it does not), Plaintiffs have not satisfied this threshold. Once again, Plaintiffs cite only to

[2] Plaintiffs’ cases are distinguishable. *Brown* involved allegations that defendant intended to fraudulently mislead plaintiffs by falsely representing that it would not collect their data; *Marden* involved allegations that defendant failed to disclose its “purposeful[]” and “intentional[]” interception of “individually identifiable information about highly sensitive [mental and reproductive] health issues” that it associated with plaintiffs’ Facebook IDs (*Marden v. LMND Med. Grp., Inc.*, No. 23-cv-03288-RFL, 2024 WL 4448684, at *3 (N.D. Cal. July 3, 2024); *Shah* involved allegations that defendant purposefully used employment, bank account, citizenship, and credit card application, eligibility, and approval status information for marketing and sales purposes).

paragraphs of the FAC that have no bearing on their own alleged experiences, and which allege only generically that "Defendant 'uses the information it collects to link the [unspecified, generic] user to a de-anonymized profile.'" (Opp. at 13 (quoting FAC ¶¶ 23, 173, 184).) As set forth in detail above and in OpenX's opening brief, Plaintiffs fail to plausibly allege that OpenX used the limited, high-level data it purportedly collected from Plaintiffs (IP addresses, device and browser information, and visits to a handful of websites' homepages) to deanonymize either Plaintiff. (Mot. at 10); *supra* at II.A. Accordingly, Plaintiffs have not even plausibly alleged that OpenX "intercepted their communications for the purpose of associating their data with preexisting user profiles" in violation of state law. (Opp. at 13.) Thus, even under Plaintiffs' incorrect framing, the crime-tort exception would not save their ECPA claim.

### D. Plaintiffs Have Not Shown How the Technology at Issue Violates CIPA § 638.51(a) (Count III)

Plaintiffs do not meaningfully attempt to distinguish OpenX's arguments or authority holding that technology like the OpenX pixel is not a pen register under CIPA. (Mot. at 21-23.) First, Plaintiffs do not respond at all to the fact that their proposed interpretation would lead to the extreme and unsupported result of requiring every advertising pixel on the internet to be approved by a court order as detailed in CIPA § 638.52. (*Id.*) Instead, they suggest that the plain text of § 638.52—and the absurd result it would create under Plaintiffs' interpretation—should simply be disregarded because it is a separate section of the statute. But Plaintiffs cannot ignore the plain language of the statute at issue: Section 638.51 ***expressly invokes*** the court order process described in § 638.52, and thus § 638.52 cannot be ignored when interpreting § 638.51. "Well-accepted rules of statutory construction require [avoiding] 'statutory interpretations which would produce absurd results[.]'" *WildEarth Guardians v. Jackson*, 870 F. Supp. 2d 847, 854 (N.D. Cal. 2012) (citation omitted), *aff'd sub nom*. *WildEarth Guardians v. McCarthy*, 772 F.3d 1179 (9th Cir. 2014). Doing so here, § 638.51 is correctly interpreted to exclude internet advertising pixels from the definition of pen registers.

Section 638.52 further confirms that Plaintiffs' interpretation is untenable because that section requires identifying "the physical location of the telephone line to which the pen register

or trap and trace device is to be attached." Plaintiffs do not and cannot argue that online advertising pixels are attached to any physical telephone line. Such pixels thus cannot be "pen registers" under Section 638.52. Indeed, the Ninth Circuit recently acknowledged that provisions of CIPA that have not been "augmented" to "apply to the internet" should not be interpreted as applying to internet communications. *Gutierrez v. Converse Inc.*, No. 24-4797, 2025 WL 1895315, at *2 n.2, *3 (9th Cir. July 9, 2025). While that decision related to claims under § 631(a), Judge Bybee's concurrence explained that "[i]f the California Legislature wanted to apply [CIPA] to the internet, it could do so by amending … or adding to CIPA's statutory scheme" as it has done several times before. *Id.* at *3. Judge Bybee noted that California had not updated § 631(a) "to account for advances in technology since 1967" and "[i]t is not [the courts] job to do it for them." *Id.* The same reasoning applies with equal force here. Given the absence of any amendment to expand CIPA § 638.51 to the Internet, the statute does not apply to the Internet communications alleged in this case.

Critically, Plaintiffs cite no appellate decision—or even a summary judgment ruling—adopting their expansive application of CIPA's pen register and trap-and-trace provisions to common online technologies. *Id.* The sounder and more persuasive line of cases holds that this type of technology is not a pen register; the alternative would, as described above, lead to the illogical and untenable result of effectively criminalizing all online advertising absent a court order approving the implementation of each online technology. Plaintiffs also seek to avoid OpenX's authorities by arguing that they are "based on far less comprehensive complaints" than the FAC. (Opp. at 19.) But this argument once again ignores that here, Plaintiffs allege nothing more than the collection of their IP addresses, device and browser IDs, and visits to the homepages of a handful of websites.[3]

[3] As discussed above (*supra* II.A, II.C.1), *Shah* and *Riganian* involved the alleged collection of highly sensitive personally identifying data—including medical and financial data—not at issue here. Further, *Fregosa v. Mashable, Inc.*, No. 25-CV-01094-CRB, 2025 WL 2886399, at *6 (N.D. Cal. Oct. 9, 2025) did not apply the statutory construction principles raised by OpenX, and the absurd results Plaintiffs' interpretation would create. *Echeverria-Corzan v. Fox Corp.*, No. 25-cv-04253-AMO, 2025 WL 3128194, at *1 (N.D. Cal. Nov. 7, 2025) says nothing about OpenX and contained no independent analysis.

### E. Plaintiffs Fail to State a Claim for Unjust Enrichment (Count IV)

Following its decision in *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020), the Ninth Circuit has confirmed that a plaintiff cannot pursue equitable relief at the pleading stage unless they establish that they lack an adequate remedy at law. While Plaintiffs rely on a handful of district court cases that have allowed plaintiffs to pursue alternative remedies on the pleadings, *Sonner* did not so limit its holding, and the Ninth Circuit itself has confirmed that *Sonner* applies at the motion to dismiss stage. *In re Apple Processor Litig.*, No. 22-16164, 2023 WL 5950622, at *2 (9th Cir. Sept. 13, 2023) (affirming dismissal of equitable claims and holding that under *Sonner*, "Plaintiffs were obligated to allege that they had no adequate legal remedy in order to state a claim for equitable relief."); *see also Selby*, 2025 WL 2950164, at *4 (affirming dismissal of equitable claims where plaintiffs failed to explain "how the money they seek through restitution is any different than the money they seek as damages") (citing *In re Apple Processor Litig.*, 2023 WL 5950622, at *2). Further, Plaintiffs do not—and cannot—allege that they lack an adequate remedy at law. (Mot. at 23-24; Opp. at 21.) Accordingly, their unjust enrichment claim must be dismissed. *See Gilligan* Order at 7.

## III. CONCLUSION

Plaintiffs FAC fails to establish injury to support standing for any of their claims, and fails to state any cause of action. Further, Plaintiffs filed their FAC ***after*** reviewing OpenX's Motion to Dismiss their original Complaint (ECF No. 22), which detailed the defects that doom their FAC. Because Plaintiffs have failed to state any claim even after the benefit of amendment, further leave to amend would be futile. Accordingly, the FAC should be dismissed in its entirety, with prejudice. *See Lesnik v. Eisenmann SE*, 374 F. Supp. 3d 923, 941 (N.D. Cal. 2019) ("Because any amendment would be futile, and it would be unduly prejudicial to Moving Defendants to litigate a third motion to dismiss regarding the same deficiencies, leave to amend is DENIED.")

Dated: January 9, 2026

MORRISON & FOERSTER LLP

By: */s/ Tiffany Cheung*
Tiffany Cheung

*Attorneys for Defendant*
OPENX TECHNOLOGIES, INC.